[For subsequent proceedings, see Case No. 10,977.]

## Case No. 10,977.

### PEREGO v. BONESTEEL.

[5 Biss. 69.] [1]

Circuit Court, D. Wisconsin.    Oct. Term, 1860.

GARNISHMENT—ASSIGNEE UNDER FRAUDULENT ASSIGNMENT—PROPERTY TURNED OVER TO RECEIVER.

1. In Wisconsin an assignee under a fraudulent assignment may be made a garnishee in attachment proceedings, and it is immaterial how the property came into his hands, so it be property liable to seizure by attachment.

2. If the garnishee afterwards turns over property to a receiver appointed under a creditors' bill filed by another creditor, the court will protect him by ordering the proceeds of such property paid to the creditors to whom he was first liable as garnishee.

It appears that an attachment was issued out of this court against John and Henry Bonesteel at the suit of Henry C. Bowen and others, and on the 16th of June, 1859, Joseph Cary was summoned as garnishee; and a writ of attachment was issued out of this court against the same defendants, at the suit of Horace B. Claflin and others, whereupon Joseph Cary was summoned as garnishee on the 20th of July, 1859. By his answer, he held the property of the defendants by virtue of an assignment from them to him for the payment of debts; and that he then had in his hands about three thousand one hundred dollars in money and about ten thousand dollars in goods.

After the decision of this court that the attachment in the case of Alexander Stewart and others against Bonesteel was well founded, for fraud in the assignment, Cary, the garnishee, paid over the funds in his hands to the plaintiffs in that and other attachments, and also in part payment of the debt of Henry C. Bowen and others.

These two attachments and those preceding, in order of time, were issued and proceeded in for the same cause and in the same manner. Cary was summoned as garnishee and was permitted by the plaintiffs to remain in possession of the property until he surrendered it after the decision in the case of Stewart and others. He was as much liable for the property that came to the hands of the receiver as he was for the property and money he paid on the attachments, as it was all in his possession when these two attachments were served. The possession of the receiver was substituted for that of the garnishee Cary. Cary gave up all charge of the remaining property, and the sheriff attached it on the 15th of November. If Cary was legally chargeable as garnishee, the sheriff's attachment would not release him, and he would be chargeable with the value of the goods that came to the receiver's hands on these two attachments of Bowen and others, and Claflin and others. If he was legally chargeable, as garnishee, with

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the goods that passed into the receiver's hands, he could only divest himself of the liability by the consent of these attaching creditors.

It is contended that Cary could not be made chargeable by the attachments, as he held the property of the defendants under an assignment, and that upon the proceeding by garnishee process under the attachments, the validity of the assignment could not be inquired into; that it was the duty of the plaintiffs in the attachments to require the officer to treat the assignment as a nullity and to take the property into custody. It is true that the plaintiffs might have done so after indemnifying the marshal, but the question is, were they bound to do so?

In these cases, affidavits were made according to section 34 of the attachment laws, that Joseph Cary had in his hands property of the defendants, and in pursuance thereof he was summoned. By section 35 of the law, from the day of such service, he stood liable to the plaintiffs in the attachments for the amount of the property and moneys, credits and effects in his hands; and he shall answer under oath all questions put to him touching the property, credits and effects in his possession or within his knowledge. If the garnishee fails to appear and answer, he may be attached and judgment may be rendered against him for the amount of the plaintiff's debt. If it appear from the answer of the garnishee that he was indebted to the defendants, or that he had property in his hands belonging to the defendants at the time he was notified, he shall forthwith deliver such property or pay the amount of his indebtedness to the officer; and in case of his not delivering over the property or paying his indebtedness, the court may enter judgment against him. And if it appear from the answer of the garnishee that he holds the title of any real estate, or any interest therein, in trust for the defendant, or for his benefit, he shall convey the same to the officer, who shall, under the direction of the court, proceed to sell the same in the same manner as a receiver. In case the plaintiff is not satisfied with the answer of the garnishee, the plaintiff may have a trial on the issue formed by such answer. Now, I think from the whole scope of the law, an assignee under a fraudulent assignment may be made a garnishee in attachment. If he confesses in his answer the fraud, or if it is found by a jury, he is in law a trustee of the property in his hands. Under the laws it is immaterial how the property came into his hands, if it is property that is liable to seizure by attachment. When the assignee is satisfied that the assignment is voidable by creditors, he may turn over the property, and he may even convey real estate, to the officer. In the case of Mead v. Purdy [Case No. 9,367], this court has carried out this provision of the law, and proceeded in the sale, and the deed, and in ordering a writ of as-

sistance, the same as if it were a case in equity. It is a law of the state regulating titles, and may be followed in this court.

The attachment law provides for a trial of the issue raised by the answer of the garnishee, and there is no more common issue than the one raised by Joseph Cary in his answer. Such has been the practice of this court, and, I presume, of the courts of the state under the law. The attaching creditors were not bound to have the goods seized in Cary's hands in the first instance, but they may proceed against him as garnishee to test his title, and if successful, to charge him with their value. The attachment, in the first instance, being necessary to prevent the garnishee from disposing of the property, it is proper for the court to proceed in the case to a final determination.

Upon the answer of Joseph Cary, and the proofs submitted, there is no doubt the attachments were issued on legal grounds, and that the alleged fraud is fully established.

Cary was made chargeable to these plaintiffs with the value of the property that passed into the hands of the receiver. If judgments were rendered against Cary for the amount of said property, he would have a right to have the amount realized out of the property by the receiver appropriated to those attachments, he not having possession of the property fraudulently. Upon this consideration, the money paid into court by the receiver will be ordered paid on the two judgments of Bowen and others and Claflin and others; and if there should be a surplus, it will be paid to these complainants.