SUTTON vs. HASEY, Garnishee, etc.

*October 25 — November 20, 1883.*

FRAUDULENT CONVEYANCE: EVIDENCE: GARNISHMENT. *(1) Findings sustained. (2) Admission of improper evidence, when immaterial. (3) Admissions of vendee. (4) As to what assignees of creditors conveyance is void. (5) Amount paid by assignee immaterial. (6) Garnishment of fraudulent vendee: Levy of execution on property conveyed. (7) Personal judgment against garnishee.*

1. Findings that a certain conveyance of property was fraudulent as to creditors, are *held* to be sustained by the evidence.
2. The admission of improper evidence, upon a trial without a jury, will not work a reversal of the judgment if the evidence properly admitted is sufficient to sustain the findings.
3. The question being whether a transfer of property was fraudulent, evidence of a statement by the vendee to a creditor of the vendor, made several months after the transfer, that he had taken the property into his hands to prevent creditors from pressing the vendor, and of the subsequent attachment of the property by such creditor and the compromise of the attachment suit, is admissible to prove the purpose for which the vendee held the property.
4. Sec. 2322, R. S. (providing that a conveyance which is void as to creditors shall be equally void against their *assignees*) applies to assignees who purchased their claims *after* as well as to those who purchased before, the void conveyance.
5. If the vendor in such void conveyance owed the full amount of the claim to the original creditor, the assignee may recover the full amount, and it is immaterial how much he paid for the claim.
6. A judgment creditor may maintain garnishment proceedings (under sec. 2753, R. S.) against the vendee in a fraudulent conveyance of the debtor's property, although after the commencement of such proceedings a second execution upon his judgment has been levied upon the property included in such conveyance.
7. In a proceeding by garnishment against one who has received, by a fraudulent conveyance, property of a judgment debtor in excess of the debt to the plaintiff, a personal judgment against the garnishee for the amount of such debt is not erroneous.

APPEAL from the Circuit Court for *Columbia* County.

The case is thus stated by Mr. Justice TAYLOR:

" The plaintiff had recovered judgment against the de-fendant Chapman for the sum of $837.93. Execution had been duly issued on said judgment, and had not been re-turned when proceedings against the appellant, *Hasey*, were commenced under sec. 2753, R. S. 1878. The object of the garnishee proceedings against *Hasey* was to subject certain property in his possession to the payment of said judgment, on the ground that he had obtained such property from the defendant Chapman by a sale which was fraudulent and void as to the creditors of said Chapman. *Hasey* denied that he had any property or money in his possession or under his control, belonging to the said Chapman, or that he was in any way indebted to him. The plaintiff took issue upon this denial, and the case was tried in the circuit court by the court without a jury.

" The evidence upon the trial showed that on the 24th of September, 1879, Chapman and wife made a deed of con-veyance to the said *Hasey* of their farm, containing 206 acres, subject to a mortgage thereon of $4,000 and part of a year's interest, and a one-third interest in a cheese factory, for the consideration, as expressed in said deed, of $2,450, and on the same day Chapman executed a chattel mortgage upon all his personal property not by law exempt from sale on execution, except three steers, on its face purporting to secure the payment of certain notes and claims therein set forth, amounting to the sum of $2,300. The farm of 206 acres and the one-third interest in the cheese factory was all the real estate Chapman owned, except his homestead in the city of Columbus, a small part of which was subject to sale on execution, and the excess of the homestead was afterwards sold to pay a debt due to one of the creditors of Chapman. The deed and mortgage, it was claimed by the plaintiff, were fraudulent and void as to the creditors of Chapman, because, as he

alleged, they were made for the purpose of defrauding or hindering and delaying the creditors of said Chapman.

"After a very full hearing the learned circuit judge found as a fact that 'the sale and mortgage were made and given with the intent, on the part of both Chapman and *Hasey* [the appellant], and for the purpose of hindering and delaying and defrauding the creditors of said Chapman,' and, as a conclusion of law, that 'as to the debts owing by said Chapman at the time, the said deed and chattel mortgage were absolutely void.' There are various other findings of fact in the record, which tend to establish the fraudulent intent of the parties, to all of which exceptions were duly taken by the appellant."

[The garnishee *Hasey* testified that the agreement between himself and Chapman on September 24, 1879, was that the latter should *sell* to him all of the property, real and personal, in payment of the indebtedness to him. On being asked by the court why, if there was an absolute sale of the personal property, a chattel mortgage was given, he answered: "Mr. Chapman thought that perhaps he could redeem some of that chattel mortgage property, and he wanted the privilege of redeeming it if he could — he wanted some of it."

One Polley, whose deposition was read in evidence on behalf of the plaintiff, testified that in 1879 he held a note made by Chapman; that in December of that year, in a conversation with him about paying or securing the amount due on the note, Chapman said that he had put his property into *Hasey's* hands because he was afraid his creditors would press him and he thought if he had time he would be able to pay all his debts, that he owned the property as much as he ever did, and that he was willing to secure the debt to Polley on the personal property if *Hasey* was willing; that about two weeks later *Hasey* called upon Polley, by request of the latter, and, among other things, said that he had taken the

property into his hands to keep creditors from pressing Chapman, for Chapman thought if he had time he would be able to pay his debts; that *Hasey* declined to give his own note for the amount due to Polley, but said he supposed he could secure the debt on the personal property if Chapman was willing; that, security not being given, Polley brought suit against Chapman and attached therein his farm, his interest in the cheese factory, and his homestead; and that the suit was afterwards settled by Chapman's attorney, at the request of *Hasey*. Both Chapman and *Hasey* denied that they had made the statements to Polley, testified to by him.

Other facts will sufficiently appear from the opinion. There was a judgment in favor of the plaintiff and against the garnishee, *Hasey*, personally, for $875.43 and costs. *Hasey* appealed.]

For the appellant there was a brief by *E. V. Briesen*, his attorney, and *G. W. Bird*, of counsel, and oral argument by *Mr. Bird*.

For the respondent there was a brief by *A. G. Cook*, his attorney, and *Lander & Lander*, of counsel, and oral argument by *Mr. Cook*.

TAYLOR, J.   The learned counsel assigns as errors on this appeal that the circuit judge erroneously found the following as facts in the case:   (1) That the value of the real estate conveyed by Chapman to *Hasey* was $6,630, and the personal property was of the value of $1,156.40; (2) that the total indebtedness and liability of Chapman to *Hasey*, including the $4,000 mortgage on the farm, was no more than $6,535.12, and that the value of the property, over and above such indebtedness, was the sum of $1,251.22; (3) that Chapman, on the day he made the deed and chattel mortgage, was otherwise largely indebted to other persons and threatened with suit, and that *Hasey* knew he was largely indebted and threatened with suits; (4) in finding that the

three two-year-old steers were intended to be included in the mortgage, or were delivered to or disposed of by *Hasey*; (5) in finding that the transfers were made with intent on the part of both *Hasey* and Chapman to hinder, delay, and defraud Chapman's creditors; (6) in finding that at the time plaintiff's notes, upon which he obtained judgment against Chapman, were made, Chapman owned the personal property described in the chattel mortgage. He also assigns as error that the judge found as a conclusion of law that the transfers were void as to the plaintiff and his judgment.

After a careful reading of the evidence contained in the record, we are unable to say that these findings of fact are not fully sustained by the evidence. There is certainly no such preponderance of the evidence against the findings as would justify the court in setting the same aside. As to the value of the real and personal estate conveyed by Chapman to *Hasey*, the preponderance of the evidence would seem to be in favor of the finding rather than otherwise. If there is any mistake in the finding as to the amount of the total indebtedness and liability of Chapman to *Hasey* at the time of the transfer, it is, according to *Hasey's* own showing, less than such actual indebtedness only by the sum of about $45; and such mistake, if it be one in the finding upon this point, could not prejudice the appellant in the case. The evidence shows very conclusively that at the time of the transfer Chapman was largely indebted to other persons than *Hasey*, or those holding claims against Chapman which he *(Hasey)* had agreed to pay, and we think the evidence raises a fair presumption that *Hasey* was cognizant of the fact and also that Chapman was threatened with suits by some of those creditors. The finding that it was the intent of both *Hasey* and Chapman that the three two-year-old steers should be included in the chattel mortgage, or at all events be transferred, is sustained by the testimony of Chapman that such was the intention, and by

the other fact that they were afterwards sold and *Hasey* received the purchase money for them. This evidence is not contradicted by *Hasey* himself, but is rather confirmed by his testimony.

The finding that the transfers were made with the intent on the part of both *Hasey* and Chapman to hinder, delay, and defraud the creditors of Chapman, is certainly fully sustained by the testimony of the witnesses sworn on the part of the plaintiff, and we would not be justified in setting it aside, except upon the ground that such evidence was not worthy of credit. This we do not think we would be justified in doing. The learned circuit judge who tried the case was certainly in a much better position to judge of the credibility of that testimony than we possibly can be, and his judgment upon that question ought to stand unless it is overborne by a very decided preponderance of the evidence on the other side. Looking at the evidence of Chapman and *Hasey*, and their acts subsequent to the transfer, in regard to the property claimed to have been absolutely purchased by *Hasey* from Chapman on September 24, 1879, and the version given to that transaction by the testimony of the plaintiff's witnesses is rather confirmed than otherwise. The taking of the chattel mortgage by *Hasey* on the personal property, at the time he claims to have made an absolute purchase thereof, is inconsistent with such purchase; and his renewing the mortgage two years afterwards, and his then making affidavit that the whole sum mentioned in said mortgage was still due to him, is certainly inconsistent with the claim now made, that the debts and claims of *Hasey* against Chapman, described in said mortgage, were fully paid and discharged by the sale of the lands and the same personal property described in said mortgage by Chapman to *Hasey* two years previously. We think the explanation given to this transaction of the mortgage by *Hasey* and Chapman is quite insufficient to nullify its effect as evidence

against them. *Hasey's* subsequent conduct in buying up the outstanding notes of Chapman at a large discount, and without any apparent consideration for so doing except the transfer of the lands and chattel mortgage, is slight evidence, at least, tending to show that, as between the parties, Chapman and *Hasey*, there was a secret trust in favor of Chapman inconsistent with the claim now made that the sale was absolute. Upon reading the whole evidence in the case the mind is impressed, as the mind of the circuit judge was, that the intention of the parties was to hinder, delay, and in law defraud the creditors of Chapman.

The learned counsel further alleges as error that the court improperly admitted in evidence the declarations of Chapman, made after the execution of the deed and chattel mortgage, for the purpose of impeaching the good faith of the transaction. It may be that some of these declarations of Chapman were not proper evidence against *Hasey*, but as this case was tried by the court without a jury, the admission of such improper evidence should not work a reversal of the judgment when it appears that the evidence which is properly in the case is sufficient to sustain the findings of the court. See *Cairns v. O'Bleness*, 40 Wis., 469–477; *Norris v. Persons*, 49 Wis., 101–103. We are of the opinion that the evidence, without the declarations of Chapman which were objected to by the appellant, sustains the findings of the court. These admissions were undoubtedly admissible for the purpose of showing the intent of Chapman in making the transfer, and if not admissible for the purpose of showing the intent of *Hasey*, we must presume that the learned circuit judge only considered them for the purpose of finding the intent of Chapman, and that he did not consider them in finding the intent of *Hasey*. The transaction with Polley, several months after the transfer to *Hasey*, was competent evidence tending to prove the purpose for which *Hasey* held the property of Chapman.

The learned counsel for the appellant claims that the plaintiff, *Sutton*, was a creditor of Chapman subsequent to the transfer of the land and personal property to *Hasey*, and that he is in no position to question the good faith of that sale. There would be great force in this argument if it were a fact that *Sutton* was a subsequent creditor of Chapman within the meaning of the law. The fact is that the notes upon which *Sutton* obtained his judgment were given by Chapman before the pretended sale to *Hasey*. The only question in the case is whether *Sutton*, having purchased the notes after the sale to *Hasey*, must be treated as a subsequent creditor of Chapman, or whether he stands in the same relation to the transfer as the parties stood of whom he purchased the notes.

The statute, we think, settles the question in favor of the proposition that *Sutton*, as purchaser of the claims against Chapman, has the same right to question the good faith of the sale to *Hasey* that the original creditors would have, had they brought the action, and that it is wholly immaterial that *Sutton* purchased after the sale to *Hasey*. Sec. 2322, R. S. 1878, provides " that every conveyance, charge, instrument, or proceeding declared void by the provisions of this title as against creditors or purchasers, shall be equally void against the heirs, successors, personal representatives, or assignees of such creditors or purchasers." The plaintiff in this action is clearly an assignee of the original creditors of Chapman, within the meaning of this section of the statute, and if the conveyance to *Hasey* was void as to such original creditors, it is equally void as to *Sutton*, their assignee. The language of the statute is very general, and we cannot construe it to mean assignees holding the claim at the time the fraudulent conveyance is made. The construction we give to this section is fully supported by the following authorities: *Warren v. Williams*, 52 Me., 343–349; Bump on Fraud. Conv., 495, and cases there cited.

It was immaterial what *Sutton* paid for the claims. Chapman could not defend against the claim of *Sutton* by showing that he paid less than the face of the notes when he purchased them. He, Chapman, owed the full amount of the notes to the assignors of *Sutton*, and *Sutton*, being the lawful owner and holder of the claims, was entitled to recover the amount due thereon, irrespective of their cost to him. There was no error, therefore, in excluding evidence as to the consideration paid by *Sutton* for the claims upon which his judgment against Chapman was obtained.

It is objected that the plaintiff should not recover in this proceeding, because, after the same was properly commenced under the provisions of sec. 2753, R. S. 1878, a second execution was issued on the judgment against Chapman, and property levied upon sufficient to satisfy the execution. We do not think this objection is well taken. The judgment against Chapman had not been paid, and the property levied upon had been replevied by the appellant. It is true, appellant had given a bond to answer for the value of the property in case it should be determined that the sheriff was entitled to hold the property seized on his execution to satisfy Chapman's debt. If, however, *Hasey* should be compelled to pay the amount of the Chapman judgment in this proceeding, and on the trial of the replevin action the sheriff should succeed, he could only recover damages against *Hasey* for the amount unpaid on the judgment, and if it were all paid, he would either be defeated in that action or recover only nominal damages.

There does not seem to be any objection to the plaintiff's pursuing both these remedies at the same time. If the proof showed a seizure of sufficient property upon the execution to satisfy the judgment against Chapman,— and there was no dispute as to the ownership of the property so seized, or its liability to be applied in payment of the judgment,— there would be reason for holding that no judgment should be

rendered against the defendant in the garnishee proceedings until it was ascertained whether such levy would discharge the judgment. In such case the proper course would be to get a stay of proceedings in the garnishee action until the result of the proceedings upon the execution was ascertained.

The learned counsel for the appellant takes exceptions to a personal judgment against his client for the amount of the plaintiff's claim, but in his brief he does not argue the point. The objection was, we think, sufficiently answered in the case of *Ferguson v. Hillman*, 55 Wis., 181.

*By the Court.*— The judgment of the circuit court is affirmed.