Filed May 23, 1892.

------

### No. 13,776.

### JASEPH *v.* THE PEOPLE'S SAVINGS BANK ET AL.

ATTACHMENT.—*Action Upon Note and Mortgage.*—*Proceedings in Garnishment.*—In an action upon a note and for a foreclosure of a mortgage executed to secure the same, the plaintiff has the right to institute any ancillary proceedings for the collection of the note that he would have had the right to do if the suit was upon the note alone and not coupled with the suit to foreclose the mortgage, and for that purpose he may institute proceedings in attachment and garnishee one of the defendants.

SAME.—*Fraudulent Sale of Property—When Creditors May Garnishee—Assignee.*—When a debtor makes a sale of his personal property subject to execution with the fraudulent intent to cheat, hinder and delay his creditors, and the party to whom it was sold knew or should have known of the fraudulent purpose, and the assignee disposes of the property and converts the proceeds thereof to his own use, he is liable to the creditors of the assignor in proceedings in garnishment for the value of the property so conveyed to and disposed of by him. *Jaseph v. Kronenberger*, 120 Ind. 495, overruled.

COFFEY, J., dissents.

From the Vanderburgh Circuit Court.

*A. Gilchrist* and *C. A. De Bruler*, for appellant.

*J. M. Shackelford* and *S. B. Vance*, for appellees.

OLDS, J.—This is an action brought by the appellee, the

People's Savings Bank, against Larkin Fitzgerald, John C. Fares, John V. Fares and the appellant, Simeon Jaseph.

The complaint is in three paragraphs, and if the judgment is sustained it can be only on the third paragraph, and as the paragraphs are not materially different we omit the first and second, and state in brief the contents of the third. It is alleged that the defendants, Fitzgerald, Fares and Fares, by their promissory note, dated the 7th day of August, 1884, agreed to pay the plaintiff, four months thereafter, the sum of $443.55, with interest thereon at the rate of eight per cent. per annum after maturity, and with attorney's fees (a copy of the note is set out); that no part of said note has been paid; that the sum of fifty dollars is a reasonable attorney's fee for collecting the same, and plaintiff is entitled to recover the same from said defendants.

It is further averred that Fares and Fares are only sureties of defendant Fitzgerald on said note; that on the 1st day of July, 1884, the defendant Fitzgerald made a mortgage to the defendant John C. Fares, upon certain personal property, describing it, to secure the said Fares in the payment of one note of even date therewith for $1,500, due nine months after date, with seven per cent. interest, and the further sum of $400 advanced to said Fitzgerald by said Fares, and also to secure said Fares from loss by reason of any further advancements that might be made or any endorsements of said Fares for said Fitzgerald.

At the date of the execution of said mortgage Fitzgerald resided in the county of Henderson and State of Kentucky, and the whole of the property embraced in said mortgage was situate therein. The said mortgage was on the day of its date acknowledged before a notary public, and on said day recorded in the office of the clerk of the Henderson county court, and the law of the State of Kentucky authorizing the recording of the same is set out, and averring that the same was duly and legally recorded, and a copy of the same is set out with this paragraph.

It is further averred that on the 9th day of December, 1884, the defendant John C. Fares made a mortgage of all the property owned by him to John Kistner and others to secure sundry debts therein named other than the debt of plaintiff herein mentioned, which mortgage was duly acknowledged by him and recorded in the recorder's office of Vanderburgh county; that said debts mentioned in said mortgage executed by Fares, exceeded the amount of the value of said property so mortgaged, and the whole has been exhausted in their payment, and that said Fares is wholly insolvent and has no property out of which plaintiff's said debt, or any part thereof, can be paid; that on the 12th day of December, 1884, the defendant John V. Fares made a mortgage on all of his property to John Kistner and others, securing sundry debts therein named other than the plaintiff's debt herein mentioned, which he duly acknowledged and it was duly recorded in the recorder's office of Vanderburgh county. The debts secured exceeded the value of the property mortgaged, and the property has been exhausted for the payment of said debts, and the defendant John V. Fares is insolvent and has no property out of which the plaintiff's debt, or any part thereof, can be made.

The defendant John V. Fares also, by deed of conveyance on the 10th day of December, 1884, conveyed all his property, being the property mentioned in said mortgage, to the defendant Jaseph, in trust for the payment of his debts, which deed of trust was duly recorded in Vanderburgh county; that the defendant Fitzgerald owned no property but that embraced in the mortgage before mentioned made by him to John C. Fares, and has not since that date owned any other property; that said mortgage was made and intended to secure said Fares in any liability he might incur as surety for said Fitzgerald, including the note of plaintiff herein mentioned.

And plaintiff says that it is entitled to be substituted to the rights of said Fares in said mortgage, and to have the

same foreclosed for its benefit. Plaintiff says that after the execution and acceptance of said deed of trust by said John V. Fares to the defendant Jaseph, and while suit was pending in favor of this plaintiff against said Fitzgerald in the Henderson Circuit Court, in the State of Kentucky, for the foreclosure of said mortgage, and to subject said mortgaged property to the payment of its debts, the defendant Jaseph took possession of the said property, and wrongfully removed it from the State of Kentucky, and now has the same in his possession in this county, or has wrongfully sold and converted it to his own use. Said property was worth six thousand dollars, the premises considered. The plaintiff prays judgment for its said debt and fifty dollars attorney's fees; that the said mortgage be foreclosed, and that the defendant Jaseph be required to deliver up said property to be sold to satisfy said judgment, or to account for the value of said property, and that so much thereof as may be necessary be applied to pay the judgment herein.

Issues were joined on the complaint by the answer of defendant Jaseph. After the commencement of the suit there were also proceedings in attachment commenced and an affidavit in attachment filed, alleging as a ground for attachment " that the defendant Larkin Fitzgerald has sold, conveyed or otherwise disposed of his property subject to execution, with the fraudulent intent to cheat, hinder and delay his creditors ; " also, an affidavit in garnishment filed, stating that Simeon Jaseph is indebted to the defendant Larkin Fitzgerald, and that said Simeon Jaseph has the control or agency of certain money of the said defendant Larkin Fitzgerald, which the sheriff can not attach by virtue of the writ issued herein.

Defendant Jaseph answered the garnishee proceedings, denying any indebtedness. The cause was submitted to the court for trial without the intervention of a jury, and the court, by request, made a special finding of facts, and stated its conclusions of law thereon.

The facts found by the court, in brief, are : A finding of the amount due the plaintiff upon the note ————, $554 ; that such sum is due without relief from valuation or appraisement laws ; that the mortgage was executed by Fitzgerald to John C. Fares, as stated in the complaint, but as to the debt sued on Fares was principal and Fitzgerald surety, and that such mortgage was not made as collateral security for the payment of the plaintiff's debt, and the plaintiff never had any interest in said mortgage ; that the $1,500 note which was secured by said mortgage was, prior to October 1st, 1884, purchased by defendant Jaseph from defend- ant John C. Fares for the full value of said note, and said mortgage, in so far as it was security for said $1,500, was as- signed and transferred to said Jaseph, who at all times after- wards held the same, and that the same has never been paid, except as it has been paid from the mortgage property or the proceeds thereof ; that at the time of the commencement of this suit all of the property mentioned and described in said mortgage and owned by Fitzgerald had been surrendered to said Jaseph under a bill of sale, and said Jaseph had taken the same into his possession and removed the same from Henderson county, Kentucky, to Vanderburgh county, In- diana, and that said Jaseph, after having taken possession of all of said property had sold and disposed of the same, and converted the proceeds thereof to his own use, and re- fuses to apply any part thereof to the payment of plaintiff's debt, and claims that the same belongs to him under said sale ; that, on the 10th day of December, 1884, Fitzgerald made a pretended sale of all the property he then had subject to execution to his co-defendant Jaseph, and executed and de- livered to Jaseph a bill of sale, which included the mort- gaged property ; that at the time of making said pretended sale Fitzgerald, together with his co-defendants, J. V. and J. C. Fares, was indebted to the plaintiff in the amount here- inbefore found due ; also, to other persons ; that Jaseph knew of said indebtedness, and that said bill of sale was executed

and said sale made by Fitzgerald with intent and with a view and for the purpose of hindering, delaying and preventing the said plaintiff and others from collecting their said debts, or any part thereof, and that said Jaseph knew, or ought to have known this fact; that at the time of making said bill of sale under which Jaseph claims the property, Fitzgerald and Jaseph knew that the defendants, J. V. and J. C. Fares, either had or were about to make to their other creditors assignments, transfers and mortgages to the full value of their property, both personal and real, which they, or either of them, owned subject to execution, and that the said J. C. Fares was then engaged, or had made and did on the same day make a full assignment of all his property to said Jaseph, as trustee, for the benefit of his creditors, and as to any unsecured creditors was wholly insolvent; that at the time of the making of the bill of sale of said property by Fitzgerald to Jaseph, it was subject to liens to the amount of $3,332.60, and the remainder of said property above said liens was the property of said Fitzgerald, and that the total value of said property so transferred and taken possession of by Jaseph was $4,000.

The bill of sale set out in the finding fixes the value of said property at $4,500, and shows a sale of the property by Fitzgerald to Jaseph for that amount, and the said Jaseph still holds the proceeds of said sale; that Fitzgerald, Fares and Fares are each and all wholly insolvent. And it is further found that Jaseph has taken possession of the property, and sold and converted it to his own use, and that it is of the value of $4,000.

The court states as conclusions of law that the plaintiffs ought not to be subject to any rights under the mortgage, but, under their complaint and the proceedings in attachment, the defendant having taken possession of all the property therein mentioned and converted the same to his own use, in equity and law he is liable, and ought to be required to pay so much of the remaining proceeds thereof to the

plaintiff as may be necessary to pay the said debt of the sum of $554 to said plaintiff, and the judgment ought to be rendered against all the said defendants for said sum and the costs of this suit, which is now ordered to be done.

The defendant Jaseph excepted to the conclusions of law. Judgment was rendered in favor of plaintiff against said defendants for the amount due the plaintiffs—$554.

It is contended by counsel for appellant that the suit is brought for a foreclosure of the mortgage; that under the complaint the plaintiff can have no other relief except a foreclosure of the mortgage. If the proof or the finding of facts do not entitle the plaintiff to that relief it is not entitled to any.

This question must be determined by a few well settled principles. The action upon the note and for foreclosure of the mortgage were properly joined. The plaintiff was not required to bring two actions. Having the right to join the action on the note with the action to foreclose the mortgage, the plaintiff was entitled to judgment on the note, although it failed to establish its right to a foreclosure.

It being a proper suit upon the note, it is manifestly true that the plaintiff would have the right to institute any ancillary proceedings for the collection of the note, which it would have the right to do if the suit was upon the note alone, and not coupled with the suit to foreclose the mortgage, and therefore it was proper, and the plaintiff had the right to institute proceedings in attachment and garnishee the defendant Jaseph. The plaintiff did so and the defendant Jaseph answers to the proceedings in garnishment, and the cause proceeded to trial. We think there can be no question, if the evidence and facts found entitled the plaintiff to a judgment against Jaseph under the attachment and garnishee proceedings, it was proper to render it.

We do not think the rule applies, as contended by counsel for appellant, that a complaint must be good upon some one theory, and the action must be prosecuted upon that the-

ory alone in this case. The complaint in this case was primarily for judgment upon the note, and attachment proceedings were instituted, and the garnishee-defendant without objection answered and submitted his cause to trial by the court. The cause was prosecuted as much on the theory that it was for personal judgment on the note and judgment against the garnishee as for a foreclosure of the mortgage.

The finding of facts shows that Fitzgerald, on the 10th day of December, 1884, made a sale of all the property he then owned subject to execution, including the mortgaged property, to his co-defendant Jaseph; that at the time of making the pretended sale Fitzgerald, Fares and Fares were indebted to the plaintiff in the sum found due in this case, and were also indebted to other persons; that defendant Jaseph knew of said indebtedness, and that said sale was made by Fitzgerald with intent and with a view and for the purpose of hindering, delaying and preventing the plaintiff and others from collecting their said claims against him, or any part thereof, and Jaseph knew, or ought to have known this fact, and he knew that Fares and Fares either had, or were about to make an assignment of all their property subject to execution for the benefit of certain of their creditors, and that as to unsecured creditors were wholly insolvent, and they did at the time make such assignment. Jaseph took the property by transfer, or pretended sale to him, and not by a foreclosure of a mortgage. The facts found show that Jaseph sold and converted the property to his own use, and held the proceeds of the sale in excess of the liens on the property, such excess amounting to $667.40. The price stated in the bill of sale as the amount he agreed to pay Fitzgerald is $1,-167.40 in excess of the claims, and the judgment rendered against him was only for $554.

The facts show a fraudulent transfer of the property by Fitzgerald to Jaseph for the purpose of defrauding the cred-

tors of Fitzgerald, with knowledge on the part of Jaseph of the fraud, making Jaseph a party to the fraud.

Under the same state of facts, as in this case, it was held in the case of *Jaseph* v. *Kronenberger,* 120 Ind. 495, that Jaseph could not be held as garnishee, but that decision was based upon the theory that by the fraud Jaseph did not become indebted to Fitzgerald, nor was any money placed in his hands or under his control belonging to Fitzgerald. The decision in that case was based on the general rule that the creditor stands in the shoes of the debtor, and unless the debtor himself could have maintained an action against the garnishee for the money or the debt, the creditor can not hold him as garnishee. A suggestion is made in that opinion which would indicate that the rights of the creditor, if he had any, must be worked out through a creditor's bill.

It is said in that case that "the facts as found by the court are to the effect that Fitzgerald and the appellant (Jaseph) conspired together and perpetrated a fraud, and that it was hurtful to the creditors, and there is evidence tending to support the finding." In that case this general rule, that a creditor stands in the shoes of his debtor in proceedings against a garnishee, and can not recover unless the garnishee is liable in an action in favor of the debtor is applied, overlooking and disregarding the exception to the general rule, which is quite as well settled as the rule itself, and must be regarded as a part of the rule that the creditor may reach the property, in the hands of a garnishee, fraudulently transferred to the latter by the debtor.

The rule is well and correctly stated in 2 Wade Attachments, section 327, as follows: "Before the garnishee can be held liable to plaintiff, two facts must concur: 1. He must be in possession of defendant's property, or be indebted to defendant. 2. Defendant must be indebted to plaintiff. Generally, the defendant must have a cause of action against the garnishee, and the plaintiff must have a cause of action against the defendant, supported by a cause

for attachment. But the former of these two generally indispensable conditions is subject to an exception which carries with it a flat contradiction of the statement, that the summons places the garnishee in no worse position towards the plaintiff than that occupied by him towards the defendant in attachment. He may be held as garnishee when the defendant has no cause of action against him ; when he is neither indebted to defendant, nor in possession of any of defendant's property. It is when the property of defendant has been transferred to him in a manner that is binding on the vendor or donor but is fraudulent and void as against creditors."

In Waples Attachment and Garnishment, page 215, it is said : " The plaintiff may reach property in the hands of a garnishee fraudulently transferred to the latter by the defendant. Here is a case where the defendant could not re-recover the property at law, yet his creditor may ; for the fraudulent transfer debars the defendant from suing for it, though it is no estoppel should the plaintiff in an attachment suit seek to reach the property in the transferree's hands by the process of garnishment."

In *Gutterson* v. *Morse*, 58 N. H. 529, it is held that in attachment the trustee is chargeable for proceeds received by him from his sale of the defendant's chattels which had been fraudulently and without consideration conveyed to him by the defendant. *Proctor* v. *Lane*, 62 N. H. 457. The same doctrine is held in *Risser* v. *Rathburn*, 32 N. W. Rep. 198 (Iowa).

Our statute authorizing proceedings in attachment and garnishment is broad enough to authorize the holding of a fraudulent grantee of personal property liable. If the property fraudulently transferred to Jaseph had still remained in his hands it would have been subject to attachment, and could have been levied upon by virtue of the writ, the sale treated as void, and the property ordered sold, but Jaseph had sold and disposed of the property, and converted the

proceeds thereof to his own use. By his acts he had put it beyond the reach of a writ in attachment, and thus made himself liable as garnishee to account for its value or the proceeds thereof.

It is the purpose of proceedings in garnishment to go beyond those in attachment, and reach that which can not be attached. Section 931, R. S. 1881.

The sale being fraudulent, the property remained the property of the grantor. While he could not maintain an action to recover it by reason of his own fraud, yet his creditors could subject the property to the payment of their claims, and Jaseph having put the property beyond their reach, he was liable to the creditors in proceedings in garnishment for its value.

In this case the affidavit in attachment alleged that Fitzgerald had sold, conveyed and otherwise disposed of his property subject to execution, with the fraudulent intent to cheat, hinder and delay his creditors. The affidavit in garnishment alleged that Jaseph was indebted to the defendant Fitzgerald, and had in his control money of the defendant Fitzgerald which the sheriff could not attach by virtue of the writ of attachment.

The facts found show that Fitzgerald made a sale of the property to Jaseph, and executed a bill of sale in pursuance thereof, the bill of sale showing that the property was sold by Fitzgerald to Jaseph at a stipulated price of $4,500; that the sale was fraudulent, hence Fitzgerald could not sue and recover its value, or the contract price agreed upon. On account of his own fraud he was estopped. The law would not aid him, though the property was subject to being applied to the payment of the claims of creditors. It is further found that Jaseph had sold and converted the property to his own use, and that it was of the value of $4,000 ; that it is subject to some $3,300 of liens, leaving a surplus of over $600, and Jaseph is held as garnishee, and judgment is rendered against

him for the amount of the debt in this case, $554. The price for which the property was sold, as shown by the stipulation in the bill of sale, was $4,500, being $1,167.46 in excess of the amount of the liens.

We think the finding of facts support the conclusions of law.

No motion was made to modify the form of the judgment, and no question is presented as to its form.

A question is presented as to the sufficiency of the evidence to support the finding of facts. We think the evidence is sufficient.

No issue was joined on the attachment proceedings, so that if the amount was due the plaintiff on the note from Fitzgerald, and Jaseph as garnishee was indebted to Fitzgerald, or held in his hands moneys belonging to Fitzgerald, the plaintiff was entitled to judgment against him as garnishee.

We think the facts authorized the judgment. So far as the plaintiff was concerned, the property, while it was in the hands of Jaseph, was subject to attachment, and Jaseph was liable as garnishee for the proceeds thereof or the actual value of the property after conversion. Jaseph having sold the property and put it beyond the reach of creditors, and having converted the proceeds to his own use, he was liable for its actual value. Jaseph having sold the property and received the proceeds, the proceeds would be treated as belonging to Fitzgerald.

While by reason of the fraud, Fitzgerald could not maintain an action against Jaseph, either for the property or its value after conversion, yet, as to creditors, it would be his, and Jaseph would hold it in trust for the benefit of creditors, and is liable as garnishee. The rule above quoted, as laid down by Wade, enunciates the true doctrine, that a fraudulent assignee of personal property is liable as garnishee, though he may not be liable in an action brought by the fraudulent assignor, the assignor being estopped by his

fraud from recovering either the property or its value in case of conversion by the assignee.

It is with some reluctance that we disapprove of the decision in the case of *Jaseph* v. *Kronenberger, supra,* yet we feel constrained to do so rather than perpetuate this erroneous doctrine. The rule we have laid down in this case was not clearly stated or supported by the authorities in the brief of counsel in that case, and hence the rule, without the exception, was declared.

There is no error in the record.

Judgment affirmed, with costs.

Filed May 24, 1892.

## DISSENTING OPINION.

COFFEY, J.—I regret my inability to concur in the opinion in this case. As I am unable to do so, it is but fair to my associates, as well as those interested in the case, that I should give the reasons for my dissent.

Section 931, R. S. 1881, provides that " If at the time an order of attachment issues, or at any time before or afterward, the plaintiff, or other person in his behalf, shall file with the clerk an affidavit that he has good reason to believe that any person, naming him, has property of the defendant of any description in his possession, or under his control, which the sheriff can not attach by virtue of such order; or that such person is indebted to the defendant, or has the control or agency of any property, moneys, credits, or effects; or that the defendant has any shares or interest in the stock of any association or corporation,—the clerk shall issue a summons notifying such person, corporation or association to appear at the ensuing term of the court, and answer as garnishee in the action."

Section 939, R. S. 1881, provides that "A garnishee in attachment shall not be compelled in any case to pay or perform any contract in any other manner, or at any other time,

than he would be bound to do for the defendant in attachment."

The affidavit for a writ of garnishment in this case is in the usual form, no charge of fraud or intimation of fraud on the part of the garnishee being found therein. Had the property, formerly owned by the attachment defendant, been found in his hands I have no doubt that an issue might have been framed involving his right to hold it, including an issue as to whether its transfer was fraudulent or otherwise.

But no property was found in his hands. It had been sold, and the court held him liable for the proceeds, on the ground that the transfer to him by the attachment defendant was made with the intent to cheat and defraud creditors. This finding and judgment was wholly outside of any issue between him and the plaintiff in the attachment. If this is the correct mode of procedure, then I submit that any one who purchases property may, at any time within six years after such purchase, be proceeded against by way of garnishment, and without any intimation or notice that he is charged with fraud, until such charge is developed by the evidence, be held for the proceeds of such property, and required to turn them over to the attachment plaintiff.

The authorities relied upon to sustain such a result are, 2 Wade Attachments, section 327; Waples Attachment, p. 215; *Gutterson* v. *Morse,* 58 N. H. 529; *Proctor* v. *Lane,* 62 N. H. 457, and *Risser* v. *Rathburn,* 32 N. W. Rep. 198. What is said by Wade on Attachments, *supra,* is based upon the case of *Fearey* v. *Cummings,* 41 Mich. 376, and *Clark* v. *Brown,* 14 Mass. 271. The case of *Fearey* v. *Cummings, supra,* rests upon a peculiar statute of the State of Michigan (section 6498), which gives the attachment plaintiff the right to question the good faith of a chattel mortgage executed to a garnishee.

In the case of *Clark* v. *Brown, supra,* no question of fraud was involved.

What is said in Waples on Attachment, *supra,* is based

wholly upon the case of *Gutterson* v. *Morse, supra*. *Gutterson* v. *Morse, supra*, rests upon the peculiarity of the statutes of New Hampshire. In that State the person who would be a garnishee in this State is treated as a trustee, and the proceeding against him corresponds more nearly to a creditor's bill than it does to our attachment proceedings. *Proctor* v. *Lane, supra*, rests upon the same statute.

In the case of *Risser* v. *Rathburn, supra*, there was a direct issue of fraud made and tried. There was also a finding by the jury, in answer to interrogatories, that the garnishee was indebted to the attachment defendant in the sum of $488.26 on an agreement to pay the difference between the invoice of certain goods and a debt due from the attachment defendant to the garnishee.

In my opinion these authorities do not fully support the conclusion reached in this case. It must be constantly borne in mind that an attachment proceeding is a stranger to the common law. It exists only by statute, and while a statute may be framed so as to authorize a judgment like the one rendered in this case, in my opinion, our statute does not authorize it.

That the funds in question could have been reached by the creditors of the attachment defendant, in a suit for that purpose, where proper issues involving the question of fraud could have been framed and tried, is too well settled to need argument. *Phelps* v. *Smith,* 116 Ind. 387 ; *Goldman* v. *Biddle,* 118 Ind. 492.

In my opinion this is the only mode by which they could have been reached, inasmuch as the garnishee, under our statute, is treated as a mere stake-holder.

Filed May 24, 1892.