McINTOSH & WARREN v. OWOSSO CARRIAGE & SLEIGH CO.†

(Court of Civil Appeals of Texas. Austin. Jan. 24, 1912. Rehearing Denied March 13, 1912.)

1. FRAUDULENT CONVEYANCES (§ 181*) — TRANSFER OF STOCK IN TRADE—BULK SALES ACT—TITLE OF TRANSFEREE.

Under the Bulk Sales Act (Gen. Laws 31st Leg. c. 27), assuming its validity, the purchaser of a dealer's entire stock in trade, as against the creditors of the seller, acquired no title to the goods in excess of the debts owing on the goods and paid by him.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 554–559, 561–567; Dec. Dig. § 181.*]

2. FRAUDULENT CONVEYANCES (§ 229*) — TRIAL — ADMISSIBILITY OF EVIDENCE — FRAUD.

In garnishment proceedings, it may be shown that a sale is fraudulent as to a creditor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 668–670; Dec. Dig. § 229.*]

3. FRAUDULENT CONVEYANCES (§ 182*)—PERSONAL LIABILITY—CONDITION PRECEDENT—LIEN.

The plaintiff in a direct proceeding against the purchaser of goods from an insolvent debtor for the purpose of defrauding the creditors of such debtor cannot obtain a personal judgment against such purchaser unless he has obtained a lien upon the goods by attachment or otherwise.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 568–577; Dec. Dig. § 182.*]

4. FRAUDULENT CONVEYANCES (§ 182*)—PERSONAL LIABILITY—TRUSTEE FOR CREDITORS.

Where the purchaser of the entire stock of an insolvent debtor paid full value for the goods without fraud in making the purchase, and had none of such goods in his possession when he was garnisheed by a creditor of the seller, judgment could not be rendered against

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

him for the proceeds of the goods sold as a trustee for the benefit of creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 568–577; Dec. Dig. § 182.*]

**5. GARNISHMENT (§ 1*)—NATURE OF REMEDY.**

Garnishment being a statutory remedy, liability under it must be determined by the statute.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 1; Dec. Dig. § 1.*]

**6. FRAUDULENT CONVEYANCES (§§ 228, 229, 230*)—REMEDIES OF CREDITOR—NULLITY OF TRANSFER—ATTACHMENT—GARNISHMENT.**

A purchaser of goods from an insolvent debtor, though he pays full value therefor, if he knows or is chargeable with notice of the seller's fraudulent intent, acquires no title thereto as against the creditors, but title remains in the fraudulent debtor, and such goods may be seized upon execution or attachment, or a lien may be fixed upon them by garnishment while they remain in the hands of the fraudulent purchaser.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 660–670; Dec. Dig. §§ 228, 229, 230.*]

**7. GARNISHMENT (§ 191*)—ATTORNEY'S FEE—PREVAILING PARTY.**

Where defendants in garnishment are held not liable, they are entitled on request to the allowance of a reasonable attorney's fee.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 372–379; Dec. Dig. § 191.*]

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Action by the Owosso Carriage & Sleigh Company against C. K. Sweet, in which McIntosh & Warren were garnisheed. Judgment in part for plaintiff, and defendant garnishee appeals. Reversed and remanded with instructions.

T. C. Wilkinson, for appellant. I. J. Rice, for appellee.

### Findings of Fact.

JENKINS, J. This suit was tried before the court without a jury upon an agreed statement of facts, which shows that one C. K. Sweet was engaged in business in the town of Brownwood, as a dealer in implements and machinery, and that on or about the 10th day of August, 1907, he sold his stock of goods, wares, and merchandise to McIntosh & Warren at private sale for a consideration of $6,005.97, which was a fair valuation for same; that said sale was not made in the ordinary course of trade, but was in bulk; that in making said sale said Sweet did not comply with the terms of the "Bulk Sales Law" passed by the Thirty-First Legislature (Gen. Laws 31st Leg. p. 66). The appellants paid said consideration as follows: They assumed two debts owing by said Sweet for said goods in the aggregate sum of $4,911.95, which they had paid prior to the institution of the suit in which garnishment was issued against them, and also at the time of said sale paid said Sweet $500 cash and executed to him their negotiable promissory note for $594.02 due January 1, 1910, which was

paid at maturity. There was no intentional fraud upon the part of appellants in purchasing said goods, and said deal was made in ignorance of said Bulk Sales Law. The evidence seems to indicate that there was no intentional fraud upon the part of said Sweet in making said sale. He held notes on farmers in Brown county for more than enough to pay the remainder of his indebtedness, which notes would have been collected but for the unprecedented drought that prevailed in Brown county. Prior to the institution of said suit and the issuance of the writ of garnishment herein, appellants had sold all of said goods. Appellee obtained judgment against Sweet December 20, 1910, for the sum of $1,883.60. On October 19, 1910, appellee sued out a writ of garnishment and the same was served on appellants October 20, 1910.

Appellants answered that they were not, at the time when said writ was served on them, nor at the time of answering the same, indebted to C. K. Sweet in any amount, and that they did not have any of his effects in their possession. Appellee contested this answer, alleging both that appellants were indebted to said Sweet and that they had effects of said Sweet in their hands at the time said writ was served, in that they purchased the stock of goods hereinbefore referred to without complying with the terms of said Bulk Sales Law.

The court rendered judgment against appellants for the sum of $1,094.02, the aggregate amount of cash paid by them to said Sweet, and the note given him, with interest thereon at the rate of 6 per cent. per annum. The court filed the following conclusions of law: "That the sale by defendant Sweet to McIntosh & Warren of the stock of merchandise was in violation of the law known as the Bulk Sales Law, and therefore was fraudulent and void as to plaintiff, and that garnishees are liable to the extent of $1,094.02 (being the amount of cash and note given defendant for the merchandise), notwithstanding garnishees had disposed of all the goods; and judgment is therefore rendered for plaintiff and against garnishees for $1,094.02, as will more fully appear from the decree in this case rendered and entered."

The opinion heretofore rendered in this case is withdrawn, and the following, which does not change the judgment of this court in this case, is filed in lieu thereof.

### Opinion.

What is known as the "Bulk Sales Law" passed by the Thirty-First Legislature (Gen. Laws, p. 66), provides that any sale or transfer of a stock of merchandise, otherwise than in the ordinary course of trade, without complying with the terms of said law, "shall be void as against creditors of the seller." Sweet, in the sale to appellants, did not comply with

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

this law. The constitutionality of this act is attacked by appellants, but we do not deem it necessary to pass upon this issue for the reason that, though it be assumed that this law is valid, we do not think the judgment of the trial court herein should be sustained.

[1] Upon such assumption it follows that as against Sweet's creditors the appellants acquired no title to the goods, in excess of the debts owing on said goods and paid by them. Had appellants been in possession of said goods when the writ of garnishment was served on them, for the purpose of this suit, it is conceded that it must have been held that they were in possession of effects belonging to Sweet.

[2] In this state it may be shown in garnishment proceedings that a sale is fraudulent as to creditors. Armstrong v. Elbert, 14 Tex. Civ. App. 141, 36 S. W. 139; Holloway Seed Co. v. Bank, 92 Tex. 187, 47 S. W. 98; Willis v. Yates (Sup.) 12 S. W. 233.

[3, 4] Such being the law, was appellee entitled to judgment against appellants, they having paid full value for the goods, there being no intentional fraud in said sale, and they having none of said goods in their possession when the writ of garnishment was served upon them?

It seems to be the settled law of this state, and this is conceded by appellee, that a plaintiff cannot, in a direct proceeding against one who purchased goods from an insolvent debtor for the purpose of hindering, delaying and defrauding the creditors of such debtor, obtain a personal judgment against such purchaser, unless he has obtained a lien upon such goods by attachment or otherwise. Le Geirse v. Kellum, 66 Tex. 243, 18 S. W. 509; Kessler v. Halff, 21 Tex. Civ. App. 91, 51 S. W. 49; Blum v. Goldman, 66 Tex. 623, 1 S. W. 899. In many states, under proceedings in equity or creditors' bill, personal judgments would have been rendered against the defendants under the facts of the cases above cited. If this cannot be done in this state in a direct proceeding, can such judgment be rendered against a garnishee for the proceeds of goods sold by him, upon the theory that, as to such proceeds, he is a trustee for the benefit of creditors? As limited by the facts of this case, we answer in the negative.

[5] Garnishment is a creature of the statute, and liability under it must be determined by the statute. Given v. Taylor, 6 Tex. 315; Jemison v. Scarborough, 56 Tex. 361; Gause v. Cone, 73 Tex. 241, 11 S. W. 162.

Appellee, in support of the judgment herein; cites Wait on Fraudulent Conveyances, § 177, Bump on Fraudulent Conveyances, 567; 14 Am. & Eng. Ency. Law, 790 and 792, Moore on Fraudulent Conveyances, vol. 2, p. 743, and 20 Cyc. 663. The statements of the writers above referred to and the cases cited in support of the text are practically the

146 S.W.—16

same. We quote from Cyc. as follows: "Where property or choses in action have been conveyed or transferred for the purpose of defrauding creditors, the grantee or transferee may, in many jurisdictions, be held to the liability of a garnishee or trustee on account of the property so conveyed, *or the proceeds, if he has disposed of the same.*" (Italics ours.)

If by the language used by these text-writers is meant a transferee who has not paid value, or one who has participated in the intended fraud, some of the cases cited support the text. But the text does not say that, in all cases where a sale would be void as to creditors by reason of constructive fraud, the transferee, though he may have paid full value, and had no actual intent to defraud, will be held liable in garnishment for the proceeds, where he has sold the goods prior to the service of the writ upon him, nor will the authorities cited support such contention.

The case of Armstrong v. Elbert, 14 Tex. Civ. App. 141, 36 S. W. 139, is cited in support of the text. In that case nothing was decided except that a sale may be attacked as fraudulent under garnishment proceedings, and that the service of the writ creates a lien upon the goods in the hands of the garnishee at the time of such service. Of course, where one has obtained a valid lien upon personal property, he may obtain a personal judgment against one who thereafter converts the same to his own use.

We make the following summary of the other cases cited in support of the text: In Cottingham v. Grocery Co., 129 Ala. 200, 30 South. 560, 87 Am. St. Rep. 58, the garnishee was in possession of the goods when the writ was served, but said goods had been previously levied upon by writs of attachments. It was held that he might pay the proceeds of the goods to the attaching creditors, and such payment would relieve him from liability as garnishee. In Van Ness v. McLean, 3 Idaho (Hasb.) 439, 31 Pac. 798, Grassly v. Reinback, 4 Ill. App. 341, Jaseph v. Bank, 132 Ind. 39, 31 N. E. 524, and Heath v. Page, 63 Pa. 124, 3 Am. Rep. 533, the purchaser was a volunteer, at least to the extent that he was held liable. As a correct statement of the law in such case, we quote from Heath v. Page, supra, as follows: "If the purchaser is a mere volunteer, holding the property for the benefit of the fraudulent debtor, he is in contemplation of law a debtor, and the proceeds in his hands is a debt." "Equity will treat the proceeds as a debt, for in contemplation of the parties it is such." Wait on Fraudulent Conveyances, § 175. In such case the law will not aid the fraudulent debtor in enforcing the debt, but will lend such aid in behalf of a creditor. The same principle applies, where by virtue of a secret agreement, the trans-

feree took the property in trust for the fraudulent debtor, with the view of covering it up from his creditors. This is the effect of the decision in Sutton v. Hasey, 58 Wis. 556, 17 N. W. 418; Millar v. Plass, 11 Wash. 237, 39 Pac. 956. In Hastings v. Baldwin, 17 Mass. 552, the goods had been assigned as collateral for a debt. The court said that, if it should turn out that he should realize from the sale of such goods an amount in excess of 'the debts secured, such excess would be a debt due to the owner ot the goods. Of course, where goods are held in trust, if anything remains after satisfying the trust, it should be paid to the grantor, and might be arrested in the hands of the garnishee by a writ of garnishment. In Bank v. Smith, 75 Miss. 753, 23 South. 428, the issue was as to whether a sale might be attacked as fraudulent in a garnishment proceeding. This was in fact the issue in Jaseph v. Bank, supra, wherein the Supreme Court of Indiana overruled its former decision in the case of Jaseph v. Bank, 120 Ind. 495, 22 N. E. 301. In Green v. Doughty, 6 N. H. 572, a defaulting creditor transferred his goods to the garnishee, who in payment of same executed a note to a third party. The payee claimed no interest in the note. Held the debt was owing to the creditor. In Proctor v. Lane, 62 N. H. 457, held that the holder of collateral to secure a lawful debt was not liable in garnishment. Sabin v. Michell, 27 Or. 66, 39 Pac. 635, decides nothing except as to the sufficiency of the service of a writ of garnishment in order to determine the priority of liens as against an attaching creditor. The garnishees were in possession of the goods when the writ was served. Crane v. Sickles, 15 Vt. 252, was not a proceeding in garnishment. On a direct proceeding it was held that a bill of sale by a woman of all of her property in consideration that garnishee would support her the remainder of her life was void as to creditors of the grantor. Perego v. Bonesteel, Fed. Cas. No. 10,977, 5 Biss. 69, deals only with the priority of the claims of a receiver and an attaching creditor. The cases cited from Missouri and Michigan were decided under special statutes of those states. At the risk of being tedious we have thus reviewed these cases, and we find that they support the text that the holder under a fraudulent transfer can be held under a writ of garnishment for the proceeds of the goods transferred to him, only when he has not paid value, and therefore is in fact indebted to seller in the amount of such proceeds; or where he is a trustee, either in fact or by virtue of a secret agreement with the seller.

There is one other case cited by said textwriters, to which we have not referred, viz., Hawes v. Mooney, 39 Conn. 37, wherein, under "factoring process," which seems to be similar to our writ of garnishment, the defendant was held liable for the entire proceeds of goods sold by him, though he had paid for them in part. This decision seems to be placed upon the ground of actual fraud. The court said: "The operation of the rule may be somewhat harsh, but it must be remembered that the case to which it is applied is one of actual and contemplated fraud, participated in by the defendant and instigated by him." Whether or not a party participating in an actual and contemplated fraud could be thus penalized under our garnishment statute is not presented in this case.

The only case directly in point, cited by appellee, is Kohn v. Fishback, 36 Wash. 69, 78 Pac. 199, 104 Am. St. Rep. 941. The Supreme Court of Washington cites no authority in support of its decision in that case, except two cases from that state, to wit, FitzHenry v. Munter, 33 Wash. 629, 74 Pac. 1003, and Millar v. Plass, 11 Wash. 237, 39 Pac. 956, and neither of these cases support the decision. In FitzHenry v. Munter, the facts were: Mrs. Hershfield, who was indebted to Shireck Bros., after selling a portion of her stock of goods at auction, sold the remainder to one Munter. FitzHenry claimed that they were in fact his goods, and that the amount owing by Munter was owing to him, and that the sale was not a sale in bulk, and therefore not void as to creditors under the statute. Munter deposited the money due on said goods in court. Held that it was a sale in bulk and that the creditors were entitled to the money as against FitzHenry. The issue in the case of Millar v. Plass is set out above. Ferguson v. Hillman, 55 Wis. 181, 12 N. W. 389, is referred to by Wait in his text, section 177. In that case it was found that the chattel mortgage was without consideration, and that the transferee held the property and its proceeds in trust for the insolvent debtor. This was not a garnishment case, but a direct action in the way of a creditors' bill.

There is a dictum in Willis v. Yates (Sup.) 12 S. W. 232, which would seem to support appellee's contention. The statement is clearly dictum, in as much as it did not appear that the garnishee had sold any of the goods. Yates bought the goods December 3d, and the writ was served on him on the 9th of the same month. Our Supreme Court in Holloway Seed Co. v. Bank, 92 Tex. 187, 47 S. W. 95, makes the following statement in reference to the case of Willis v. Yates: "We are of the opinion that it was not intended that the garnishee could, by an unlawful disposition of the property after service of the writ, force the plaintiff to a new suit. This we understand to be the ruling in Willis v. Yates." In the Holloway Seed Company Case, the court held that under proper pleading the plaintiff might obtain a moneyed judgment against garnishee, if it did not (and if it had sold them it could not) deliver the goods that were in its possession

when the writ was served. But this was placed upon the ground that the service of the writ created a lien on such goods.

We here remark that the appellee, in contesting the answer of the garnishees, did not allege that they had disposed of the goods, but that they were indebted to Sweet, and had effects belonging to him in their possession.

In Willis v. Heath, 75 Tex. 125, 12 S. W. 971, 16 Am. St. Rep. 876, the answer of the garnishee that he was not indebted to the judgment debtor was contested on the ground that he was indebted to B. D. Wilson, it being alleged that he had purchased the stock of goods belonging to said Wilson, and that, for the purpose of defrauding the creditors of said Wilson, he had executed a negotiable promissory note to the wife of said Wilson. An exception to this plea was sustained. The court treated the note as payable to B. D. Wilson, the judgment debtor, and as equivalent to a payment in cash. The court held that a garnishee might properly be charged with property fraudulently transferred to him, but said: "This doctrine is applicable in a case where the garnishee holds effects of the debtor under a fraudulent assignment or transfer."

A purchaser of goods from an insolvent debtor may in fact hinder, delay, and defraud his creditors, though full value be paid, for the reason that money in the pocket of the debtor is beyond the reach of the law.

[6] In such case if the purchaser knew, or is chargeable with notice of such fraudulent intent by fiction of the statute of frauds, the wisdom of which has met with approval since its passage in 13 Elizabeth, the title, as to creditors, remains in the fraudulent creditor, and such goods may be seized under execution or attachment, or a lien may be fixed upon them by garnishment while they remain in the hands of the fraudulent purchaser. But there is no statute in this state which gives a creditor any title to the proceeds of such goods. To say that the purchaser who, in good faith, has paid full value for such goods, without any intent to defraud, though such purchase be a constructive fraud by virtue of some such statute as the Bulk Sales Law, holds the proceeds of such goods in trust for creditors, would indeed be a fiction of law, and one that we are not prepared to announce. The purchaser who pays full value for goods does not in fact hold them in trust for the seller, nor for his creditors, but for himself and against everybody. That he is estopped to set up such claim where he has participated in the fraudulent intent of the seller is by force of the statute, and where the statute halts the courts must halt.

If it be said that our decision herein shortens the arm of the bulk sales stat-

ute, we reply, not so; we leave it just as the Legislature fashioned it. We have no power to lengthen it.

[7] Appellants in their answer to the writ of garnishment, after denying liability, alleged that they had been compelled to employ attorneys to defend them in this suit, and asked that they be allowed a reasonable attorney's fee. If they are not liable (and we hold that they are not) they are entitled to such attorney's fee.

For the reasons herein stated, the judgment in this case is reversed and remanded with instructions to the trial court to enter judgment for the garnishees, and also to allow them a reasonable attorney's fee.

Reversed and remanded with instructions.