HENRY BEST

*v.*

THE FULLER & FULLER COMPANY.

*Opinion filed April 17, 1900.*

1. DEBTOR AND CREDITOR—*conveyance intended merely as security is void as against creditors.* A conveyance of property which is absolute on its face, but which is intended merely as security, is fraudulent and void as to creditors.

2. SAME—*secret understanding for benefit of vendor is in fraud of creditors.* A secret understanding or agreement between the parties to a sale, for a benefit to accrue or be reserved to the vendor, the sale being absolute in terms, is a fraud upon creditors of the vendor.

3. SAME—*what not a sufficient change of possession.* As against creditors a change of possession is not sufficiently shown by a small sign upon which the vendee's name appears as successor to the vendor, where the vendor conducts the business as before the sale, acting as sole owner, while the vendee manifests no interest in the property except to sign a subsequent bill of sale to a third party.

4. SAME—*when debtor's vendee is personally liable to creditor.* A vendee in a fraudulent bill of sale who has re-sold the property to an innocent purchaser and received the full proceeds thereof, which greatly exceed the amount of his claim against the debtor which the original bill of sale was intended to secure, is personally liable to a creditor of the original vendor, where the effect of the last transfer is to defeat the collection of the creditor's judgment.

*Fuller & Fuller Co.* v. *Gaul*, 85 Ill. App. 500, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

In a bill and supplemental or amended bill filed by appellee January 14, 1898, it is alleged that appellee, on January 5, 1898, recovered a judgment against Adolph Gaul for the sum of $1440.51, which was for drugs sold by complainant to Gaul; that at said date it sued out execution on the said judgment and delivered the same to the sheriff, who made a demand on Gaul, notifying him to file a schedule, and returned the execution January 12, 1898, endorsed "no property found and no part satisfied."

The bill alleges that on or about December 10, 1897, Gaul was engaged in the drug business in the store No. 657 North Clark street, in the city of Chicago, and about that date transferred to the defendant, Henry Best, his father-in-law, his entire stock of drugs, furniture and fix- tures, including a soda fountain and cash register, and that Best is pretending to be in possession; that the transfer was made to place the property transferred be- yond the reach of creditors and to enable Gaul to con- trol and enjoy the same; that since the transfer he has exercised authority as usual, and there is no evidence of change of possession except a small card hung in the store; that the stock and fixtures were worth $8000 at the time of transfer, and that since the transfer, Best, in various conversations, admitted that Gaul owed him only $2300 at the time of the transfer, and that he had no in- terest in the transferred property except as security for said sum; that said property constituted the entire estate of Gaul, and that at the time of the transfer Gaul owed other creditors besides complainant, which facts were known to Best; that Best and Gaul conspired to defeat complainant's claim, and that the transfer was fraudu- lent; that the soda fountain transferred to Best was worth $3000; that on or about September 1, 1898, Gaul and Best, or one of them, made a pretended transfer of said stock of drugs, or such portion of them as remained in the store, to John J. Johnson, who is now in possession and conducting said business, which transfer was merely colorable, etc., and on August 31, 1898, said Johnson exe- cuted to William G. King a chattel mortgage of the said property purporting to secure a note for $2360, which mortgage was without consideration, etc., and that J. E. Norling claims an interest in said property as a member of the firm of J. J. Johnson & Co., composed of Johnson and Norling. The bill prays that the transfer to Best and to Johnson be decreed to be fraudulent; that the chattel mortgage be set aside as fraudulent; that Best

may be decreed to be personally liable for the full amount of Gaul's indebtedness to complainant, in case complainant should fail to realize its judgment because of transfers, etc.

Answers were filed by all the defendants and replications to the answers. The evidence was heard in open court, and the court dismissed the bill and the amended or supplemental bill for want of equity. The recovery of judgment by complainant, and the issuing and return of execution, as averred in the bill, and that judgment was for drugs sold by the appellee to Gaul prior to the transfer to Best, are facts proven by the evidence and not controverted.

B. M. SHAFFNER, for appellant:

A debtor has a right to sell his stock of goods to a creditor in satisfaction of his debt. The mere doubt of the fairness of such transaction is not sufficient. Fraud must be proved by a preponderance of evidence. *Dryer* v. *Durand*, 80 Ill. 561; *Waterman* v. *Donelson*, 43 id. 29; *Nelson* v. *Smith*, 28 id. 495; *Holbrook* v. *Bank*, 10 Ill. App. 140; *Railroad Co.* v. *Watson*, 113 Ill. 196.

The presumption of law is that dealings between relatives are fair and honest, without any wrongful or fraudulent intent, and no presumption of fraud attaches to such dealings. *Schroeder* v. *Walsh*, 120 Ill. 403; *Baldwin* v. *Freydendall*, 10 Ill. App. 106; *Mey* v. *Gulliman*, 105 Ill. 272.

CHARLES LANE, for appellee:

The relationship of the parties to a conveyance under questionable circumstances is calculated to awaken suspicion, and the transaction will be closely scrutinized. Wait on Fraud. Con. (2d ed.) sec. 242; Bump on Fraud. Con. (4th ed.) sec. 67; *Martin* v. *Duncan*, 156 Ill. 274; *Lehmann* v. *Greenhut*, 88 Ala. 478; *Johnson* v. *Dick*, 27 Miss. 277.

On a sale of personal property the change of ownership and possession must be indicated by such outward,

open, actual and visible signs as can be seen and known to the public or persons dealing with such property, and such possession must be exclusively in the vendee. Wait on Fraud. Con. (2d ed.) sec. 253; *Martin* v. *Duncan,* 156 Ill. 274; *Beaver* v. *Danville Shirt Co.* 69 Ill. App. 320; *Gilbert* v. *Stoddart,* 30 id. 231; *Weeks* v. *Prescott,* 53 Vt. 57; *Claflin* v. *Rosenberg,* 42 Mo. 439; *Potter* v. *Payne,* 21 Conn. 360; *Lowe* v. *Matson,* 35 Ill. App. 602.

On a sale and conveyance of property by an insolvent debtor, with a reservation of an advantage or benefit to him, the conveyance is fraudulent as to his creditors. *Blodgett* v. *Webster,* 24 N. H. 92; *Gordon* v. *Reynolds,* 114 Ill. 118; *Stiner* v. *Lowrey,* 98 Ala. 208; *Moore* v. *Wood,* 100 Ill. 451; *Johnson* v. *Whitewell,* 24 Mass. 71; *Stephens* v. *Regenstein,* 89 Ala. 561; *Dalton* v. *Currier,* 40 N. H. 237.

A conveyance of property with the intent to disturb, hinder, delay or defraud creditors of the grantor or vendor of such property, is void as against such creditors. Starr & Cur. Stat. chap. 59, sec. 4; *Beaver* v. *Danville Shirt Co.* 69 Ill. App. 320; *Hanchett* v. *Goetz,* 25 id. 445.

Where a creditor secures a preference by having property conveyed to him of greater value than his debt, the preference is void. *Chipman* v. *Glennon,* 98 Ala. 263; *Smith* v. *Boyer,* 45 N. W. Rep. 265; *Kellogg* v. *Cline,* 54 Fed. Rep. 696; *Reynolds* v. *Weinman,* 25 S. W. Rep. 33; *Savings Bank* v. *McDonnell,* 89 Ala. 434; *Hanchett* v. *Goetz,* 25 Ill. App. 458.

Per Curiam: In deciding this case, the Appellate Court, after making a full statement of the facts and evidence, delivered the following opinion, (the appellant here being the appellee in the Appellate Court, and the appellee here being the appellant in that court):

"There is no evidence that Best assumed to pay any part of the back rent as part of the consideration of the sale to him. 'A conveyance of property which is absolute on its face, but which is really intended as a mortgage or security, is well enough as between the parties,

but the settled doctrine is that such a transfer of property is fraudulent and void as to creditors.' (*Beidler* v. *Crane*, 135 Ill. 92, 98.) The reason given for the doctrine is, that in such case there is necessarily a secret trust for the benefit of the vendor, and that the natural and necessary effect of the instrument, in not disclosing the trust, is to mislead, deceive and defraud creditors. (Ibid.)

"That Gaul executed the bill of sale as security is proved by his own testimony. He testified: 'There wasn't anything left for me to do but to sell him the store to secure my indebtedness to him.' What Best wanted was his money or security, and Best's statements to Pierce, which were not denied, show conclusively that he regarded a bill of sale as merely a security,—else how could he say to Pierce that he was an honest man, and all he wanted was the $2300; that Gaul told him the store was worth $8000; that he thought it worth $6000, and that, if he could sell it for that amount, he wanted to pay all creditors? And why did he state to Lane that he had no disposition to beat any one, and that he believed that if the store should be held until summer and then sold, all Gaul's creditors would be paid? This language would be appropriate coming from one who held the property in trust for creditors, but would be not only inappropriate, but absurd, if used by a purchaser of the property absolutely and in good faith.

"We are of opinion, from the evidence, that the actual intention of the parties was to hinder and delay creditors other than Best, and that the bill of sale was made for that purpose and to secure Gaul's indebtedness to Best. The evidence shows clearly that Best knew that Gaul had other creditors; that the property in the store was all Gaul had; that he was in a 'bad fix.' He also believed, as he himself says, that the property was worth $6000, and he as well as Gaul must have known, on the hypothesis that they were moderately endowed with common sense, that for Best to take an absolute deed of the prop-

erty merely as security, and continue the business with Gaul as manager, would necessarily hinder and delay Gaul's other creditors. Gaul testified that at the time of the execution of the bill of sale he knew that it would delay appellant in the collection of its debt. The consideration for the alleged purchase was grossly inadequate, if the bill of sale is to be regarded as absolute in fact and not merely as a security. Best only claims that Gaul owed him $2300. The evidence is overwhelming that the property, when the bill of sale was executed, was worth, net, between $5000 and $6000. Gaul, the only witness for appellees as to value, testified that it was worth only $1730, but we do not think his evidence entitled to much credit. Gaul testified that he told Best, before the transfer, that under favorable circumstances the store might bring $5000, and Best told Pierce that Gaul told him it was worth $8000, and his testimony in other particulars is inconsistent with his statement that the property was worth only $1730.

"'A vendee who purchases property of an insolvent debtor for less than its value, thereby deprives the creditors of the difference and defeats their just expectations.' (Bump on Fraudulent Conveyances,—3d ed.—p. 44. See, also, *Dodson* v. *Cooper*, 50 Kan. 680, and *Mobile Savings Bank* v. *McDonnell*, 89 Ala. 434.)

"'Insolvency means a general inability to answer, in the course of business, the liabilities existing and capable of being enforced.' (*Brouwer* v. *Harbeck*, 9 N. Y. 589, 593, and cases cited.) That such inability existed in Gaul's case was fully proven.

"But in addition to the sale having been made as security to Best and to hinder and delay creditors, the evidence tends strongly to show that another object was to secure a benefit or advantage to Gaul. Best testified that he wanted to secure himself and give Gaul some employment so long as he had the store; that Gaul had no income except what he had from the store. The only

objection that Best made when Pierce, appellant's rep-
resentative, suggested to him to turn over the store to
appellant, and that he should first be paid from the pro-
ceeds of the business, was, that it would throw Gaul out
of employment; that if Gaul could not stay there and run
the store he would be on his, Best's, hands, with his fam-
ily, and he would have to take care of him.   Best also
stated to Pierce and Lane that at the time of the trans-
fer it was understood that Gaul should continue as man-
ager of the store.   Gaul was retained in the store as
manager, and was paid, or rather paid himself, $75 per
month for what he could do before business hours in the
morning and after five, six or seven o'clock in the even-
ing,—which is certainly a very suspicious circumstance.
A secret understanding or agreement between the parties
to a sale for a benefit to accrue or to be reserved to the
vendor, the conveyance being absolute in terms, is a fraud
as to creditors of the vendor. (*Moore* v. *Wood,* 100 Ill. 451,
and cases cited.)

"Appellant's counsel contends that there was no such
change in the possession of the property as the law re-
quires, and we are inclined to that view.   In *Martin* v.
*Duncan,* 156 Ill. 274, certain property was attached as the
property of the defendant in error, George W. Duncan.
The goods were claimed by Robert Duncan, a brother of
George.   The attachment was levied May 28, 1891, and
on the 16th of that month George had executed to his
brother, Robert, a bill of sale of the goods.   The court
thus states the case: 'George W. Duncan, against whom
the suit was brought, lived in Dixon and had two stores,
—one in Dixon and one in Ottawa.   His brother, Robert
Duncan, the defendant in error, lived in Ottawa, and
managed the store in the latter place from September,
1888, to May 16, 1891, when the transfer hereinafter men-
tioned is alleged to have been made.   The defendant in
error, in the management of the Ottawa store for his
brother, George, sold goods, handled the money, made

185—4

deposits, paid for goods, paid bills by checks, took out insurance, had no clerk, kept such books as were kept, and had an agreement that he was to receive for his services $25 per month and his board. George Duncan came to Ottawa only occasionally, although the store was run in his name and advertised as his, and the stock levied upon is conceded to have been his until May 16, 1891. Up to that date Robert Duncan was merely the agent and representative of his brother, George, and his possession was, until then, the possession of George.' The court say: 'Up to May 16 defendant in error had been in possession as agent of his brother, and if on May 28 he was in possession for himself, the change in the character of the possession should have been indicated by such outward, open, actual and visible signs as could be seen and known to the public or persons dealing with the goods. (*Claflin* v. *Rosenberg*, 42 Mo. 439.) * * * When the known and previously recognized agent of an alleged vendor remains in possession, the appearance to the world is the same as though the vendor himself remained in possession, unless there are substantial and visible signs of change of title.'

"In the present case, Gaul, who prior to the execution of the bill of sale was the owner, continued in possession and managed and controlled the business as he had done prior to the alleged sale, sold goods to customers labeled 'Adolph Gaul,' and made out bills to customers headed 'In account with Adolph Gaul.' He kept his accounts in the books formerly used by him. He retained in his employ Hessler, his former drug clerk, until April 30, 1898,—nearly five months after the alleged sale,—and told Hessler that Best had nothing to do with it; that he, Hessler, was working for him, and finally sold the goods *en masse* without any intervention on the part of Best, except that the latter signed the bill of sale. Best says that he left the whole matter of the sale to Johnson, including agreement as to consideration, to Gaul. The formal signing of the bill of sale to Johnson was substan-

tially the sole act of Best in relation to the property, after the alleged sale from Gaul to him. Concisely stated, Gaul acted in all respects as if he were the sole owner of the store, and Best as if he had no pecuniary interest in it. Gaul testified that Best had no key to the store and was ignorant of the combination of the safe.

[Counsel for appellees relies on the signs as indicating a change of ownership. It may be true that the card sign over the cash register, the one in the perfumery case, and the small one on the front door with the words 'Henry Best, Successor to' on it, placed over the former sign of Adolph Gaul, might indicate to one observing them that there had been a change in the business, but we think the effect of such signs more than counterbalanced by the manner in which the business was conducted. Besides, the primary question is, was there in fact a change of possession from Gaul to Best?—because if there was not the signs were as deceptive as was the bill of sale.

"There is no evidence that Johnson, at the time he purchased the property, had any knowledge of the circumstances under which the alleged sale to Best was made or that his purchase was not in good faith. This being true, and appellee Best having received the proceeds of the sale of property worth between $5000 and $6000, appellant is entitled to a personal decree against Best. (*Coale* v. *Moline Plow Co.* 134 Ill. 350, 358.)

"The judgment will be reversed and the cause remanded, with directions to enter a personal decree in favor of appellant, the Fuller & Fuller Company, and against appellee Henry Best, for the sum of $1440.51, with interest at the rate of five per cent per annum from January 5, 1898, until the date of the decree."

We concur in the foregoing views and in the conclusion above announced. Accordingly, the judgment of the Appellate Court is affirmed.

                                *Judgment affirmed.*