### Oakford & Fahnestock v. William A. Hill et al.

#### Gen. No. 4,858.

1. MERCHANDISE—*when sale of, void as against creditors.* A sale of merchandise is void as against creditors unless the act of May 13, 1905, is complied with.

2. CHATTEL MORTGAGE—*when void as against creditors.* A chattel mortgage not acknowledged and recorded in accordance with the Chattel Mortgage Act is void as against creditors.

3. CHATTEL MORTGAGE—*when void as against creditors.* A chattel mortgage upon merchandise is void as against creditors if the mortgagor is permitted by the mortgagee to sell at retail from such merchandise.

4. CHATTEL MORTGAGE—*when possession under, does not cure defect in acknowledgment and recording.* Possession under a chattel mortgage covering a·stock of merchandise does not cure a failure to acknowledge and record the same as required by statute if it does not cover after-acquired property and it does not appear by a showing that the stock of merchandise of which possession was taken was the same stock of merchandise which existed at the time the mortgage was given.

Trespass. Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

C. C. DUTCH, for appellant.

KING & BOGGESS, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

On January 18, 1906, A. E. Miller was operating a retail grocery and meat market in Averyville and had been so engaged for years. He was indebted to Oakford & Fahnestock and to many others. He had given Oakford & Fahnestock a chattel mortgage on his stock of goods and fixtures. That afternoon an agent of Oakford & Fahnestock came there and held conferences with Miller, and it is claimed that he took possession of the stock of goods under the chattel mortgage. Afterwards there were negotiations about a sale of the property outright to Oakford & Fahnestock. Miller assigned to that corporation his book accounts. In the evening Miller and his employes and one or more agents of Oakford & Fahnestock made an inventory of the stock. The agent of Oakford & Fahnestock had the key overnight. The store was open next morning and went on as usual for two or three hours, when those conducting the store heard that an officer was coming to seize the goods. They then locked the doors

and kept them locked an hour or two, and kept out a constable and writs of attachment against A. E. Miller for about fifteen minutes. An agent of Oakford & Fahnestock then came to the store and told those in the store to open it and they did so and the constable went in. Those in the store then told the constable that Oakford & Fahnestock owned the goods. The constable, however, levied his writs of attachment and put a custodian in possession, and later in the day removed goods valued at $226.04, leaving the rest of the contents of the store undisturbed. Thereupon Oakford & Fahnestock brought this suit against the attaching creditors and the constable and an attorney for the attaching creditors who was present, charging the defendants in its declaration with seizing and carrying away the stock of groceries of the plaintiff from its retail store at Averyville and converting the same to their own use. Defendants filed the general issue and pleas justifying under said writs of attachment. To those special pleas plaintiff replied that said goods and chattels at the said time, when, etc., were the goods and chattels of the plaintiff, and not of A. E. Miller. There was a jury trial and a verdict and a judgment for defendants, from which plaintiff appeals. It is not entirely clear whether plaintiff relies upon its alleged position as a chattel mortgagee in possession or upon an alleged purchase of the goods from Miller. Perhaps it may fairly be said that it relies upon both.

If plaintiff claims as a purchaser, then the testimony presents the following considerations:

1. Plaintiff did not comply with the act of May 13, 1905, entitled "An act to prevent sales of merchandise in fraud of creditors" (R. S. 1905, p. 763), and under the provisions of that statute the sale is presumed to be fraudulent and void as to creditors of Miller, including the defendants. It is no sufficient answer to say that the sale was to pay a debt owing by Miller to plaintiff. That act was designed to give

other creditors of the seller an opportunity to protect their own interests before the sale was made.

2.  It was a question of fact for the jury whether plaintiff did obtain actual possession as purchaser before the attachments were levied. While plaintiff claims it obtained possession from Miller on the afternoon of January 18th, had the possession of the key overnight, had the possession of the property again next morning, and received assignments of the insurance policies, yet Miller and the men in his employ when plaintiff's agent came there on the 18th continued to conduct the store, the lease of the building was not assigned, plaintiff neither paid nor agreed to pay rent, Miller's letterheads and billheads were continued in use, plaintiff's letterheads and billheads were not brought to the store, Miller's sign was not removed nor any change of signs made, no notice of the change was posted or given, the butterine license was not transferred and remained on the wall in Miller's name, and there was very little to apprise any one that Miller was no longer in possession. Martin v. Duncan, 156 Ill. 274; Second National Bank v. Gilbert, 174 Ill. 485; Best v. Fuller, 185 Ill. 43. There was testimony from which the jury might conclude that plaintiff was undecided whether to foreclose its chattel mortgage or buy the goods outright from Miller. Plaintiff and Miller preserved a secrecy as to what was being done, indicating that they had not reached a conclusion as to what bargain they would make. Plaintiff continued to buy up claims against Miller at a discount on the 19th, when it is doubtful if it could have had any reason for doing so if it had already bought the stock.

3.  If plaintiff bought and took possession, a secret trust for Miller was reserved. Plaintiff did not agree to pay any specific sum for the goods. Plaintiff's proof is that it was to take the goods and accounts, sell the goods and collect the accounts, apply the proceeds first in payment of their own claim, and then to pay the balance upon certain other debts owing by Miller. Very

soon plaintiff was buying up still other demands against Miller. Evidently, if there had been any surplus after paying these claims, Miller would have been entitled to it. The jury were warranted in finding that after the alleged purchase plaintiff was using the goods and accounts to some extent as Miller directed, or as seemed for his advantage. Best v. Fuller, *supra*. Under all this proof we do not think we ought to disturb the verdict on the ground that plaintiff was a *bona fide* purchaser of the goods before the attachments were levied.

If plaintiff seek to recover as a chattel mortgagee in possession, then it is confronted with the following facts:

1. The chattel mortgage was dated October 30, 1905. It was not acknowledged, entered on the docket of a justice, or recorded. It permitted Miller to remain in possession. It created a secret lien. It was void as against creditors of Miller.

2. Miller thereafter sold regularly at retail from said stock of merchandise. The consent of plaintiff is apparent. This rendered the transaction void as to creditors.

3. The seizure of possession, if any, by plaintiff, was under the chattel mortgage on January 18 or 19, 1906. Miller had been selling at retail from said stock of goods for about two months and twenty days since the mortgage was given. There can be no presumption that the stock of goods mortgaged still remained in the store. It is obvious that much of what was mortgaged had been sold and that much of the goods in the store had been bought since the mortgage was given. The mortgage did not profess to cover after-acquired property. It gave plaintiff no right to take possession of the goods acquired since the mortgage was given. If plaintiff based its right to recover upon that mortgage it was bound to show what mortgaged goods were still in the store when plaintiff claims to have taken possession under the mortgage, or that the goods removed

under the attachments were acquired by Miller before he gave the mortgage. No such proof was introduced, and the jury could not find that the mortgage gave any right to the possession of the particular property removed under the attachments.

The court refused an instruction requested by plaintiff to the effect that if employes of plaintiff were in the store when the constable entered to levy the attachments, and if before the constable made the levy said employes told the constable that plaintiff owned the goods, then this was all the possession the law required to complete a sale or constitute a taking under the chattel mortgage. This was incorrect and misleading. As we have seen, there is no proof that the goods then in the store were those which had been covered by the mortgage. If therefore plaintiff claimed to be the owner by virtue of the mortgage, he had no lawful possession as against the constable. The instruction did not submit to the jury the question whether in fact plaintiff had purchased the goods. If the employes told the constable that plaintiff owned the goods when in truth it did not own them, the fact that its employes were in the store did not establish that plaintiff was in possession. We do not need to consider whether the instruction given for defendants of which complaint is made, was in every respect exactly correct. In view of the failure of plaintiff to show a right to the goods under the chattel mortgage, and of plaintiff's failure to observe what is commonly called "the bulk sales act," we conclude the instructions were substantially correct.

The judgment is therefore affirmed.

*Affirmed.*