[No. 5470.   Decided February 4, 1905.]

ROTHCHILD BROS., *Respondent*, v. RICHARD TREWELLA, *Appellant.*[1]

FRAUDULENT CONVEYANCES—SALE OF GOODS IN BULK—REMEDY OF CREDITORS—DIRECT LIABILITY OF PURCHASER. Upon a sale of a stock of goods in bulk without demanding a list of the vendor's creditors as required by Laws 1901, p. 222, declaring such sales void as to creditors, the purchaser is not liable to the creditors in a direct action at law, their only remedy being an action of attachment or garnishment to reach the property fraudulently conveyed.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered May 19, 1904, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action against the vendee of goods sold in fraud of creditors. Reversed.

*Marshall K. Snell* and *Bertha M. Snell,* for appellants.

*Ellis & Fletcher,* for respondent, contended, among other things, that the statute makes the purchase money a trust fund for the creditors, and imposes the duty upon the purchaser to apply it, *pro rata,* among the creditors, share and share alike. *Fitz Henry v. Munter,* 33 Wash. 629, 74 Pac. 1003. In such a case, trespass on the case or assumpsit will lie. *Griffin v. Farwell,* 20 Vt. 151; *Jones v. Steamship Cortes,* 17 Cal. 487, 79 Am. Dec. 142; *Doremus v. Hennessey,* 62 Ill. App. 391; *Heridia v. Ayres,* 29 Mass. 334; *Taylor v. Smith,* 104 Ala. 537, 16 South. 629; *Hathorn v. Calef,* 53 Me. 471; *Albert's Executrix v. Blue,* 10 B. Mon. 92; *Carter v. White,* 32 Ill. 509; 21 Ency. of Plead. & Prac., p. 905; Maxwell, Code Pleading, p. 63.

[1]Reported in 79 Pac. 480.

RUDKIN, J.—Between the 8th day of February, 1902, and the 13th day of September, 1902, one Kennedy was engaged in the retail liquor business, at the town of Hoquiam, in this state. During that period he became indebted to the plaintiff in this action in the sum of $407.05, on account of the purchase price of merchandise, to be used in the conduct of his business. On said 13th day of September, 1902, and while said Kennedy was so indebted to this plaintiff for such merchandise, he sold substantially his entire business and stock in trade, in bulk, to the defendant in this action. The defendant did not demand of, or receive from, Kennedy any statement containing the names and addresses of his creditors, or in any manner comply with the provisions of the act of March 16, 1901, Laws 1901, p. 222, commonly known as "the sale in bulk act." The defendant paid Kennedy the entire purchase price of $3,200, and continued the business in which Kennedy had previously been engaged until the 26th day of January, 1903, when he sold out to one Heffron. No action was ever instituted against Kennedy to recover the amount of this indebtedness, and this defendant never assumed or promised to pay the same. A demurrer was interposed to the complaint in the court below, for want of sufficient facts, but the same was over-ruled. At the trial, the plaintiff recovered a judgment, according to the prayer of the complaint, and the defendant appeals therefrom.

The sole question presented on this appeal is this: Can a creditor of a vendor who sells property in bulk, without a compliance with the above mentioned act, maintain a direct action at law against the purchaser, to recover the amount of his debt? We think that he cannot. The only

effect of a failure to comply with the requirements of the act, so far as the purchaser is concerned, is to render the sale fraudulent and void. It does not differ from any other transfer made in fraud of creditors, except in the matter of the proof of the fraud. It gives the creditor no direct remedy against the purchaser, either in terms or ʌy implication. It is true that the statute was passed for the protection of creditors; but so was the statute of Elizabeth, which declares the common law on the subject of fraudulent conveyances; so was § 4575, Bal. Code, declaring conveyances, in trust for the use of the person making the same, void; so was § 4578, id., declaring bills of sale, not recorded, void, where the property is left in the possession of the vendor; and so with other acts that might be enumerated. But in none of these cases, so far as we are advised, has it been held that a simple contract creditor, without judgment or lien, could maintain a direct action at law against the fraudulent grantee to recover his debt.

"If a fraudulent disposition has actually been made by the debtor of his property, a creditor cannot, in the absence of special legislation, bring an action in assumpsit against those who combined and colluded with him. Assumpsit will not lie for there is neither an express promise nor a privity from which the law will imply a promise to pay the debt of the creditor." Bump, Fraudulent Conveyances, § 527.

The same author says, in § 528, that an action on the case will not lie. To the same effect, see Wait, Fraudulent Con. and Creditors' Bills, § 62.

"A creditor of one who has made fraudulent conveyances of his property cannot recover the amount of his debt by an action of assumpsit against the fraudulent creditor." 14 Am. & Eng. Enc. Law (2d ed.), p. 351.

Nor will trespass on the case lie. *Id.* In *Adler v. Fenton*, 24 How. 407, after a review of the authorities, the supreme court of the United States says:

"In the absence of special legislation, we may safely affirm, that a general creditor cannot bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of these dispositions be to hinder, delay and defraud creditors."

It seems to be firmly established that the only remedy which the law affords a creditor against a fraudulent transfer of property by his debtor is to sue his debtor, and reach the property fraudulently transferred by attachment or garnishment. These remedies would seem to be adequate in all cases where the subject of the transfer is tangible personal property. The remedy in equity is equally well defined.

"A fraudulent transfer is valid against all persons except those who proceed to appropriate the property by due course of law to the satisfaction of the grantor's debts. As it is valid against a simple contract creditor, such creditor cannot ask the aid of a court of equity to set aside the transfer, for it does not interfere with his rights. Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property before the transfer interferes with his rights or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance." Bump, Fraudulent Conveyances, § 535.

Again:

"The second prerequisite of equitable relief is that the creditor shall obtain a lien by judicial process upon the property conveyed, for it is well settled that in the absence

of statute a creditor who has not in some way acquired a right to have satisfaction out of his debtor's property specifically, cannot come into a court of equity to impeach any conveyance made by his debtor on the ground of fraud." 14 Am. & Eng. Enc. Law, p. 324.

The only conflict of authority on any of the propositions above announced is, whether one can proceed in equity upon a mere lien by attachment or otherwise, or whether he must first obtain a judgment at law against the fraudulent grantor. Unless, therefore, a transfer, declared fraudulent and void by the act in question, differs from other transfers declared void by other acts, or by the principles of the common law, this action cannot be maintained. We can discover no logical distinction between the different classes of conveyances which the common and statutory law declare fraudulent. The remedy afforded an injured creditor must, upon principle, be the same in all cases unless the legislature has provided a different remedy. This, in our opinion, the legislature has not accomplished by the act in question. The demurrer to the complaint should have been sustained.

For this error, the judgment of the court below is reversed, with instructions to dismiss the action.

MOUNT, C. J., and FULLERTON, HADLEY, and DUNBAR, JJ., concur.