JOPLIN SUPPLY COMPANY, Appellant, v. C. C. SMITH, Defendant; E. B. NOLAND, Interpleader, Respondent.

Springfield Court of Appeals, June 13, 1914.

1 BULK SALES LAW: Provisions and Construction: Conveyances in Fraud of Creditors. The Bulk Sales Law, Article 1, Laws of 1913, page 163, provides that a sale of a stock of merchandise sold in bulk shall be fraudulent as to the seller's creditors if the buyer at least seven days before sale shall not demand and receive from the seller a certified list of his creditors and the amount of his indebtedness. That the vendee demanded that the bill of sale contain the provision that the goods were free and clear of encumbrance does not constitute a compliance with the provision of the law. Such a conveyance is fraudulent as to creditors.

2. CONSTRUCTION OF STATUTES: Intendment: Limitations. Courts do not favor limitations by implication but construe all acts and parts thereof if possible, so as to give all an operative force.

3. STATUTES: Intendment of: Rights and Remedies. Where a right once exists, a statute creating a remedy should not be construed as an exclusive remedy unless the language of the statute clearly shows that this is the intention.

4. ———: How Provisos in Should be Construed. The purpose of a proviso in a statute is not to create new rights or make new laws or take away old ones already existing or repeal a part of an existing substantive law; but merely to restrict the preceding portion of the statute of which it forms a part.

5. ———: ———: Rule of Construction. It is a rule of statutory construction that a proviso should be construed with reference to the immediate preceding parts of the clause to which it is attached.

6. CONVEYANCES IN FRAUD OF CREDITORS: Statutory Provision: Failure to Comply With. Where a sale of merchandise in bulk is not in compliance with a statute requiring notice to creditors of a proposed sale, it is void as to creditors on the ground of fraud, and a creditor of the vendor may proceed by attachment against his fraudulent vendor.

7. BULK SALES LAW: Fraudulent Conveyances: Relation of Statutes. The provisions of the Bulk Sales Law examined and

construed. Relationship of Article 1, Laws 1913, page 163, section 2294, Subd. 7, R. S. 1909, and Section 2394, R. S. 1909, defined and the provisions of each compared.

8. **STATUTES: Intendment and Construction.** When a statute has been borrowed from another state and it has received the construction by the courts of that state, it is presumed that the legislature intended to adopt the law with the construction placed upon it by the courts of such state.

9. **BULK SALES LAW: Nature of Remedy Afforded.** The Bulk Sales Law affords no remedy by suit directly against the fraudulent vendee but only by attachment and garnishment against the vendor and his property in the hands of the vendee.

Appeal from Jasper Circuit Court. Division No. Two. —*Hon. David E. Blair,* Judge.

REVERSED.

*George V. Farris* and *H. W. Currey* for appellant.

(1) The creditors referred to in section 1, Laws 1913, page 163, commonly called "Bulk Sales Law," include all creditors of the vendor and is not limited in its scope to the creditors who have sold and delivered merchandise to the debtor. People's Savings Bank v. Van Allsburg (Mich.), 131 N. W. 101; Shirt & Collar Co. v. Windham, 131 N. W. 102. (2) Provisos appended to legislative enactments are not intended to impair or destroy the main purposes or to enlarge the meaning or effect of the statute to which they are added, but on the contrary to exclude from the operation thereof, something which might otherwise come within its scope. State v. Tel. Co., 116 N. W. 835; In Re Matthews, 109 Fed. 603; Futch v. Adams, 36 So. 575; Towson v. Denson, 74 Ark. 302; Brown v. Patterson, 224 Mo. 639; State ex rel. v. Brown, 57 N. W. 659; Baggaley v. Pittsburg & Lake Superior Iron Co., 90 Fed. 636. (3) The proviso is generally used

in a statute to qualify, limit or restrain the operation of general terms contained in a previous part of the section or Act, and not to introduce a distinct and independent proposition. Allen's Lessee v. Parish, 3 Ohio, 187; In re Hoss Estate, 109 Pac. 1071; State v. Robinson, 121 Pac. 848. (4) Where a new remedy is given by a statute and there are no enactive words or other provisions making it exclusive it will be deemed to be accumulative only and not to take away prior remedies. State v. Edwards, 162 Mo. 660; Walsh v. Plumbers' Assn., 97 Mo. App. 280; Clark v. Lancy, 59 N. E. 1034.

*W. R. Shuck* for respondent.

It is not the purpose of a mere proviso to add to the body of the substantive law, nor to take anything therefrom. Its purpose is to restrict, limit, or explain the general terms of the Act of which it forms a part. Brown v. Patterson, 24 Mo. 639.

FARRINGTON, J.—This case was tried in the circuit court of Jasper county on the following agreed statement of facts:

"C. C. Smith and wife were merchants operating a store at Purcell, Mo. That said company became indebted to plaintiff in the sum of forty dollars for merchandise sold to the company. That on the 12th day of July, 1913, C. C. Smith and wife sold to interpleader their stock of goods, said sale being in bulk, for the sum of $502. That Smith and wife executed and delivered to interpleader a bill of sale, acknowledged, with affidavit attached, setting out the fact that said goods were free and clear of all encumbrances. That interpleader took possession of said stock of merchandise under the bill of sale and held same for a period of about eight days. Plaintiff company on the —— day of July, 1913, sued out in justice court

a writ of attachment against C. C. Smith and wife and delivered same to the constable of Joplin township. That the constable notified interpleader of said writ, and that on the same day same was issued, demanded the debt, that at the time of said demand, interpleader tendered or made an offer to plaintiff company to turn over to plaintiff company any and all goods in said stock of merchandise that could be identified as having been sold to said C. C. Smith and wife by plaintiff company, and kept said offer and tender standing during the progress of this litigation as far as reached now. That after said tender was made, plaintiff company, through the constable of Joplin township, made no further attempt to make any levy under the writ of attachment for more than ten days when under the direction of plaintiff company, the constable served said writ of attachment as against said Smith and wife, on a certain amount of merchandise, in the building controlled by interpleader, none of which was identified or claimed to have been sold or furnished by plaintiff company except some small articles of small value, hence this suit.

"Upon a trial before A. M. Baird, justice of the peace, the justice rendered his decision for the interpleader.

"That it is agreed that at the time of the sale, made from Smith and wife, to interpleader, that Smith and wife failed to send out any notice to any creditors of the anticipated sale, and interpleader admits that his title to said property or merchandise is based solely on the bill of sale, the possession of said merchandise, the fact of said sale being in good faith so far as interpleader is concerned. That it is admitted that interpleader paid said Smith and wife in full for all the goods sold.

"It is agreed that at the time of the sale by Smith and wife to Noland, interpleader, that Smith and wife were indebted to plaintiff in the sum of forty dollars

for goods, wares and merchandise, sold and delivered to Smith and wife and which amount is still due and unpaid.

"It is further agreed that Noland, interpleader, did not demand a written statement from Smith and wife seven days before he made the purchase of a list of creditors of Smith and wife, but relied solely on his bill of sale, above mentioned."

Judgment was rendered for the interpleader and the plaintiff appealed.

The decision of the question involved requires a construction of the act generally known as the bulk sales law which was enacted by the General Assembly in 1913 (Laws 1913, pp. 163, 164, 165).

Approaching the question it will be well to bear in mind that the bulk sales law is intended to prevent a trader who is indebted from disposing of his merchandise and fixtures in a manner other than the regular course of trade which would enable him to place his property beyond the reach of his creditors. Such law is a wholesome enactment, and imposes no hardship on honest traders who desire to apply their property to the payment of their just debts.

Section 1 of the act declares that certain sales, trades, and dispositions of merchandise, etc., shall be fraudulent and void as against the creditors of the vendor unless certain steps are taken by the vendor and vendee as are set forth in said section.

Section 2 of the act is as follows: "Any vendee who shall conform to the provisions of this act shall not be held in any way accountable to any creditors of the vendor, or to the vendee, for any of the merchandise, or merchandise, fixtures and equipment, or equipment that have come into the possession of said vendee by virtue of such sale, trade, or other disposition, but any vendee who shall fraudulently fail or refuse to comply with the provisions of this act, shall upon application of any of the creditors of the vendor become

a receiver and be held accountable to such creditors
for all the merchandise, or merchandise, fixtures, and
equipment or equipment that have come into his pos-
session by virtue of said sale, trade or other disposi-
tion thereof: *Provided, however,* that nothing in this
act shall be so construed as to give any creditor, man-
ufacturer, wholesale merchant or jobber any right to,
or lien on any merchandise or article in any stock of
goods, except the goods sold and delivered by such
creditor, manufacturer, wholesale merchant or job-
ber.''

It is necessary to a determination of this case to
refer to section 2294, subdivision 7, giving as ground
for attachment a fraudulent conveyance, and to sec-
tion 2344, Revised Statutes 1909, which is as follows:
''Any attaching creditor may maintain an action for
the purpose of setting aside any fraudulent convey-
ance, assignment, charge, lien or encumbrance of or
upon any property attached in any action instituted
by him; and where several attachments in favor of
different plaintiffs are levied on the same property, all
or any number of such plaintiffs may join in the same
action for that purpose.''

The difficulty arises over the construction to be
placed upon the proviso of section 2 of the Act of 1913.
It is perfectly apparent that were the proviso not
contained in the law, the statement of facts revealing
such a sale as is declared fraudulent and void in sec-
tion 1 of the Act of 1913, a creditor would be given
the remedy of attaching the stock of goods under
section 2294, Revised Statutes 1909, and commencing
a suit under section 2344, Revised Statutes 1909, to
set aside such fraudulent conveyance.

Respondent, the vendee, contends that he has com-
plied with section 1 of the Act of 1913 by requiring
in the bill of sale the provision that the goods were
free and clear of encumbrance. This, however, falls
far short of the necessary list of creditors as is con-

templated by section 1 of the act. This provision in the bill of sale by no means informs the vendee that the vendor has no creditors. It was held in the case of Interstate Shirt & Collar Co. v. Windham (Mich.), 131 N. W. 102, under a similar bulk sales law, that a statement, sworn to, that "the stock was entirely free from debt" was not a sufficient compliance with the act.

The concrete question to be determined in this case is, Does the proviso in section 2 of the Act of 1913 limit the remedy of attachment to only such merchandise or articles in stock as were sold by the creditor to the vendor? In other words, Can a creditor who has not sold some of the identical goods or fixtures contained in the stock, when transferred in bulk, maintain an attachment against the vendor and levy on the stock under section 2294, Revised Statutes 1909?

Section 2 of the Act of 1913 creates a new remedy in favor of the creditor, providing that the vendee of a stock of goods, where the requirements of the statute have not been fulfilled, shall on application of any of the creditors of the vendor be declared a receiver and held accountable to such creditors for all the merchandise, etc., coming into his possession under such sale, etc. There is nothing in this section that would indicate that this is the exclusive remedy of a creditor of the vendor unless such intent be found in the proviso. It creates merely a cumulative, additional remedy, given where the fraudulent conveyance created in section 1 has occurred, and therefore in no way tends to limit, either expressly or by implication, sections 2294 and 2344, Revised Statutes 1909, which give to creditors the right to attach and set aside *any* fraudulent conveyance.

Limitations by implication are not favored by the courts, and it is their duty, if possible, to construe all acts and parts of acts so as to give all an operative force. [1 Lewis' Sutherland Stat. Const. (2 Ed.), Sec.

247.] Where a right once exists, a statute creating a remedy should not be construed as the exclusive remedy unless such intention is clearly manifested by the language of the statute. [Lionberger v. Bank, 10 Mo. App. 499.] The intention of the Legislature should be gathered from the text in which it is expressed. The Act of 1913 was clearly intended to put a restriction on bulk sales. From the title of the act it will be seen that the Legislature intended to create a new fraudulent conveyance and provide for the appointment of a receiver and to regulate sales and provide for the enforcement of the duties of the parties to a sale and to exclude certain sales. There is nothing in the title to show that the right to attach when a fraudulent conveyance has been made is limited or abridged. It is true that in section 2 the lawmakers did provide a remedy which was not in existence before, but this remedy, in the absence of the proviso, certainly is not exclusive, and does not take away or limit the creditor's right given in sections 2294 and 2344, Revised Statutes 1909, to attach and set aside a fraudulent and void conveyance. It is held in the case of Brown v. Patterson, 224 Mo. 639, 124 S. W. 1, that the purpose of a proviso is not to create new rights, or make new law, or take away old rights existing under the law, or repeal a part of an existing substantive law, but to restrict the preceding portion of the statute of which it forms a part. It is also a rule of statutory construction that a proviso should be construed with reference to the immediate preceding parts of the clause to which it is attached. [2 Lewis' Sutherland Stat. Const. (2 Ed.), Sec. 352.] Applying these rules to the proviso in question would indicate that the right of a creditor's lien should be limited to his own goods only where the remedy set up in section 2 of the Act of 1913 is invoked; and this is in keeping with the general law pertaining to receiverships. Besides, the limiting feature of the proviso is not a matter that effects the rights

of the vendor and vendee but is a clause intended as a means to make a more equitable application of the funds in the hands of a receiver when one is applied for.

Section 1 of the act makes the sale fraudulent and void as against all creditors of the vendor, unless (1) the vendee demands and receives the list of creditors contemplated in the act and (2) he give the required notice to *each* of the creditors named in said list. If the sale is not to be held fraudulent and void and subject to the ordinary processes of law given other creditors to defeat it except such creditor can locate something in the stock which he has sold, then why should the list to be furnished by the vendor and the notice to be given by the vendee contain anything more than a list of those creditors of the vendor who have goods in the stock which is to be transferred? the sale being fraudulent and void only as to such creditors as can identify their goods. Any proceedings against the vendee must be begun within ninety days from the date of delivery. When a man has fraudulently transferred his property and effects so as to hinder and delay his creditors, a creditor may attach such property so transferred or any other property of the vendor which has not been transferred, and by making a levy thereon, secure a lien for the payment of his debt. Were we to hold that an attachment will lie under this act only in favor of those creditors who have articles in the transferred stock, then we must hold that the provision contained in section 1 making the sale (such as took place here) fraudulent and void as to all creditors, means nothing. If the act gives a right to the goods or a lien on goods to certain creditors and that lien is to be construed as the lien of an attaching creditor under this act and the general attachment law and is confined to such creditors who can identify their goods in the stock, then the proviso is bad in that it would be class legislation. A creditor

who has sold an eighty dollar bill of goods, for example, and has received forty dollars in payment on the account, could attach for his balance due any of his goods which he sold and maintain such attachment, yet the banker who perhaps advanced the forty dollars that was paid on account is without such remedy as he has nothing which holds its identity. in the stock of goods.

A view of some of the decisions of courts of sister States may be of value. Practically all the bulk sales laws of the various States that we have examined are similar to our sections 1 and 2 with the exception of the proviso in section 2, one State (Kentucky) being the only one having a similar proviso. In all these States the remedies given to the general creditor are those of attachment, garnishment, and levy under general executions because of the fraudulent character of the sale, and these are recognized as the legal remedies of all creditors and are given in addition to the equitable remedy holding the vendee as a receiver or trustee. [See McIntosh & Warren v. Owosso Carriage & Sleigh Co. (Tex.), 146 S. W. 239; Nash Hardware Co. v. Morris (Tex.), 146 S. W. 874; Marquette Co. Sav. Bank v. Koivisto (Mich.), 127 N. W. 680; Carstarphen Warehouse Co. v. Fried (Ga.), 52 S. E. 598; Kight v. Stephen Putney Shoe Co. (Ga.), 73 S. E. 740; Bewley v. Sims (Tex.), 145 S. W. 1076; Terrell Grain & Merc. Co. v. Young (Tex.), 152 S. W. 671; Dickinson v. Harbison et al. (N. J.), 72 Atl. 941; Musselman Grocery Co. v. Kidd, Dater & Price Co. (Mich.), 115 N. W. 409; Pierson & Hough Co. v. Noret (Mich.), 117 N. W. 644; Hart v. Dean (Md.), 49 Atl. 661; Kohn v. Fishbach (Wash.), 78 Pac. 199, 104 Am. St. Rep. 973; Oakford & Fahnestock v. Hill et al., 135 Ill. App. 511.]

In 1 Moore on Fraudulent Conveyances, p. 173, Sec. 49, the rule is stated as follows: ''Where a sale of merchandise in bulk is not in compliance with a stat-

ute requiring notice to creditors of a proposed sale, it is void as to creditors on the ground of fraud, and a creditor of the vendor may proceed by attachment against his fraudulent vendor."

The Kentucky bulk sales law contains practically the same proviso that the Missouri law contains, the words of the two being identical with the exception that Missouri adds the word "creditor" before the word "manufacturer." We have been unable to find that this proviso has ever been passed upon by the Kentucky appellate courts and hence the way is entirely unblazed so far as this proviso is concerned. We do find, however, that the Kentucky court has held, in the case of Frank v. Minsterketter, 99 S. W. 219, that a doctor who attaches a stock of goods as that of the vendor (to satisfy a debt for an operation performed) because the vendor and vendee failed to comply with the bulk sales law in an attempted sale, is within his legal rights. The trial court held that his attachment would not lie, but the Kentucky Court of Appeals reversed that judgment and held that the attachment of the stock of goods should have been sustained. While in that case the question of the proviso does not seem to have been raised, the decision is helpful here in that although the Kentucky law contained the same proviso that our bulk sales law contains the court held that a creditor who had no goods to identify in the stock could maintain an attachment for his debt against the stock of goods. The Kentucky bulk sales law was passed in 1904 and that decision was rendered in 1907, and its correctness has never been questioned so far as we are able to ascertain. Anyone reading the two provisos together will instantly conclude that the Missouri proviso was borrowed from the Kentucky law, and that being true, we should follow the Kentucky decisions, because it is presumed that when the Legislature passes an act borrowed from a sister State, it passes the act with the intention that it operate as the

decisions of the sister State construe the statute. The construction placed on the statute by the Kentucky courts is at least greatly persuasive on us. [State ex rel. Kemper v. Carter, 257 Mo. 52, 165 S. W. 773, l. c. 777, 778.] This principle is so well known that we will not burden the opinion with further citations.

It will be noted that in this case it is not a contest between the creditors as to how the goods shall be apportioned among them or the proceeds derived from a sale divided, but it is a fraudulent vendee as declared in section 1 attempting to defeat the claims of the creditors of the fraudulent vendor.

Viewing this statute from another angle, the proviso contained in section 2 of the Act of 1913 does not take away any *right* to attach for fraudulent conveyances. The *right to* attach is not a *lien,* nor is it *a right to the goods,* but it is a right given by the statute law of this State passed long prior to the Bulk Sales Law of 1913 where there has been a transfer made which is actually or constructively fraudulent. Section 1 declares the conveyance fraudulent and void and leaves the goods the property of the vendor and subject to all the processes of the law against debtors. There is nothing in section 1 that in any way gives a creditor the right to any goods or a lien on any goods. There is, however, in section 1, construed with the attachment law theretofore in force, given a right to attach. Section 2 does by the very language of the act in making the vendee a receiver and making him accountable to all the creditors convert the stock of goods into a trust fund for all creditors and thus by necessary implication creates a lien on such goods and articles for all creditors under such receivership. This proviso, placed as it is in section 2, must refer to some right to the goods or a right to some lien created in the act itself in which the proviso is found, and the only provision of the Act of 1913 which within itself has any semblance of giving creditors the right to the

merchandise, etc., or a right to a lien on the merchandise, etc., is contained in section 2, and therefore the limitation contained in the proviso, if of any force at all, must certainly refer to the right to the goods or the lien created in section 2 of the act as that is the only section of the whole act which attempts to create a right to or lien on the goods, etc. The right of attachment is not a lien on the goods. The lien operates from the proceedings when the attachment law is invoked, and to hold that the purchaser may defeat the right of attachment given where there has been a fraudulent conveyance would place a much wider construction on the proviso than the language will permit. The language of section 2 is somewhat loose, as it provides that the vendee shall in no way be accountable to any creditor of the vendor or to the *vendee* (which would be himself), whereas it must have been intended to read "or to the *vendor*."

We hold that where a sale is made such as is declared fraudulent and void by the Act of 1913, creditors of the vendor have open to them the right to attach which has existed since the enactment of sections 2294 and 2344, Revised Statutes 1909, to set aside fraudulent conveyances or to seize by *fieri facias*, and also the remedy as provided in section 2 of the Act of 1913, and that unless the latter remedy is invoked, the creditors have the same rights and remedies as to fraudulent conveyances that they have always had when the law declared a conveyance fraudulent and void. In case, however, they do invoke the remedy as provided in section 2 of said act, then and not until then does the proviso, if ever, begin to operate. Keeping in mind the legislative intent of declaring such sales fraudulent and void, this construction gives a greater effect to that intent and arms the defrauded creditor with all the instruments of redress which he had heretofore as well as the one created by section 2 of the Act of 1913. This construction places no hardship on

the parties to the sale as the act plainly designates what must be done to make the sale or trade invulnerable so far as this act is concerned.

The sale, therefore, under the statement of facts herein being fraudulent and void, and no steps having been taken to invoke the remedy as provided in section 2 of the Act of 1913, the attachment and the lien acquired thereby under section 2294, Revised Statutes 1909, must prevail. The judgment is accordingly reversed. *Robertson, P. J.,* concurs. *Sturgis, J.,* concurs in a separate opinion.

## SEPARATE CONCURRING OPINION.

STURGIS, J.—In concurring in the able opinion of FARRINGTON, J., the importance of the question in hand impels me to add the following observations: The first section of the act in question is as strong in declaring the purpose of the act as any we have found in the numerous States now having a ''bulk sales law.'' Our act declares that all sales in bulk, made in violation of its conditions, ''shall be fraudulent and void as against all creditors of the vendor.'' Similar acts of several of the States make such sales only prima facie fraudulent and other such acts restrict same to creditors whose claims grow out of the business in which the goods sold are being used. Ours is a late act and, while not copied *in toto* from any one State, all its provisions seem to have been adopted from some other State or States, while its main purpose and general scope are those found in all the bulk sales laws adopted in the various States. Now, it is familiar law that when a statute is borrowed from another State, where the same has received a construction by the courts of such State, it is presumed that the Legislature intended to adopt the law with the construction placed upon it in such State; and this would be especially true

where such law is borrowed from several States giving it a uniform construction. [Pratt v. Miller, 109 Mo. 78, 18 S. W. 965; State v. Chandler, 132 Mo. 155, 33 S. W. 797; St. Louis National Bank v. Hoffman, 74 Mo. App. 203; Burnside v. Wand, 170 Mo. 531, 71 S. W. 337; Stephan v. Metzger, 95 Mo. App. 609, 69 S. W. 625.]

We find the uniform construction placed upon these bulk sales acts wherever adopted is, and was when the act was adopted in this State, that where the sale is declared fraudulent and void as a matter of law, or is shown to be such in fact where proof is necessary, the vendor is still regarded as the owner of the goods attempted to be sold so far as his creditors are concerned, no title passing to the vendee, and that the remedy of attachment and garnishment is applicable against the vendor and his goods fraudulently conveyed just as in all cases of fraudulent conveyances. [McIntosh & Warren v. Owosso Carriage & Sleigh Co. (Tex.), 146 S. W. 239; Kohn v. Fishbach, 36 Wash. 69, 78 Pac. 199, 104 Amer. St. Rep. 941; Rothchild Bros. v. Trewella, 36 Wash. 679, 79 Pac. 480.] It is said in Rothchild Bros. v. Trewella, supra, that a sale in violation of the bulk sales act "does not differ from any other transfer made in fraud of creditors, except in the matter of proof of the fraud," instancing the case where the property is left in the hands of the vendor, and adding "We can discover no logical distinction between the different classes of conveyances which the common and statutory law declare fraudulent. The remedy afforded an injured creditor must, upon principle, be the same in all cases unless the Legislature has provided a different remedy."

Such act also had uniformly been construed as affording no remedy by suit directly against the fraudulent vendee, but only by attachment and garnishment against the vendor and his property in the hands of

such vendee. [Bewley v. Sims (Tex.), 145 S. W. 1076, and cases cited: McIntosh & Warren v. Owosso Carriage & Sleigh Co. (Tex.), 146 S. W. 239, and cases cited.]

It is apparent, therefore, that in enacting section one of the act in question, our Legislature did so with the construction placed thereon that created a fraudulent conveyance no different from other fraudulent conveyances in the effect thereof and to which the remedy of attachment is applicable; and, by declaring that such a sale should be void as to *all* creditors, it declared an intent not to limit such remedy to any particular class of creditors, such as mercantile creditors, or to the very small class having the goods sold by them in the hands of the fraudulent vendor.

After so doing, did the Legislature nullify section one of the act and its whole declared purpose by inserting in section two a proviso limiting the remedy of attachment or garnishment to the small class of creditors last mentioned? Is there any other reasonable construction to be placed on the proviso contained in section two? We think there is. The provisions of section two of this act, providing that if any vendee shall fraudulently fail or refuse to comply with the provisions of this act he shall upon application of any creditor of the vendor become a receiver and be held accountable to such creditors for all the merchandise coming into his possession, is probably borrowed from the statute of Michigan, passed in 1905, Laws of Michigan, 1905, p. 322, as the same provision is there found; and our Legislature doubtless desired to afford this additional remedy of a receivership for the benefit of all creditors as there found and which is not in many, if any, of the similar acts of other States. The Supreme Court of Michigan had, however, in Musselman Gro. Co. v. Kidd, Dater & Price Co. (Mich.), 115 N. W. 409, construed the act as affording the old remedy of attachment, notwithstanding the provision

for the new remedy of a receivership, and this construction would be carried into the act when adopted here. The question then naturally arose in the mind of the legislative body as to what effect the remedy by attachment would have on the remedy by receivership, both existing concurrently, in case some creditor should attach and thereby obtain a lien on a part or the whole of the goods fraudulently sold prior to an application for a receiver for the whole property. Would such an attaching creditor, in spite of the receivership, retain his lien on the goods attached and obtain a preference over other creditors? To prevent the possibility of, such a preference and advantage to an attaching creditor seems to be the purpose of the proviso inserted in section two immediately after the remedy of a receivership, and to that section and the new remedy of receivership there provided it should be restricted. Unless a receivership is applied for the proviso in question has no office to perform. This conforms to the rules of construction of statutes that where the provisions are inconsistent or contradictory and a literal construction of a single clause or section would conflict with what precedes and with the manifest intent of the whole act the courts will harmonize the various provisions with each other, give effect to all where possible and give effect to the true intent of the lawmakers. [State v. Heman, 70 Mo. 441; Spitler v. Young, 63 Mo. 43; Ross v. Railroad, 111 Mo. 18, 19 S. W. 541; Pembroke v. Huston, 180 Mo. 627, 79 S. W. 470.]