D. W. ROBERTS, RESPONDENT, v. TONY KAEMMERER, APPELLANT.*

St. Louis Court of Appeals. Opinion filed September 21, 1926.

**1.—Fraudulent Conveyances—Bulk Sales Law—Protects All Creditors.** The Bulk Sales Statute protects all persons who were creditors of the seller at the time of the sale though they were not creditors for merchandise but were merely general creditors of the seller in other transactions.

**2.—Constitutional Law—Preferences—Class Legislation.** The Legislature has no right to make an arbitrary classification of creditors for the purpose of giving one class preference over the other, and it must be presumed that the Legislature did not intend to do so in the enactment of the Bulk Sales Law.

**3.—Same—Statutes—Construction.** A statute must be so construed, if so it may be consistent with its language, that it will not be invalid for impinging upon constitutional guaranties.

**4.—Fraudulent Conveyances—Bulk Sales Law—Creditors—Entitled to Protection of Statute.** Creditors of a merchant for merchandise sold to a different store than the one which he was selling were his creditors, not creditors of his stores, and they were all entitled to the protection of the Bulk Sales Law.

**5.—Same—Same—Sales—Failure to Comply With Statute—Damages.** The failure of the seller of his stock of merchandise and fixtures to comply with

the Bulk Sales Statute and to deliver the property in accordance with the contract of sale held buyer was entitled to recover by way of damages for such breach of contract at least the amount paid by him on the purchase price.

6.—Same—Same—Stock of Commodities Purchased for Resale—Within Statute. Stock consisting of commodities purchased for resale in the business as merchant held within the bulk sales statute.

7.—Sales—Bulk Sales Law—Contracts—Sale of Stock and Fixtures—Executory—Title. A contract for the sale of merchandise and fixtures fixing future payments and acknowledging receipt of earnest money held a mere executory contract to sell and not to have passed title so as to preclude the buyer from thereafter demanding compliance with the Bulk Sales Law.

8.—Same—Absent Agreement to Comply with Statute—Implied. In the absence of any agreement that the seller should be relieved from compliance with the Bulk Sales Law, an agreement to comply therewith was implied.

9.—Same—Time Not Essence of Contract—Waiver. The fact that the buyer of a stock of merchandise and fixtures did not request compliance with the Bulk Sales law until four days before the consummation of the deal did not defeat his right to demand compliance where time was not the essence of the contract, and, if it was, the seller waived it by his failure to insist that the request came too late under the terms of the contract.

10.—Same—Breach of Contract—Damages. An executory contract for the sale of a stock of merchandise and fixtures in bulk was binding, although not requiring a compliance with the Bulk Sales Law, entitling the buyer to recover damages on seller's breach of the contract of sale.

11.—Costs—Properly Taxed Against Defendant. Where plaintiff recovered $500 judgment in the justice court and on trial anew in the circuit court after appeal recovered only $100, he was entitled to costs in the circuit court as well as in the justice court, since upon a trial anew in the circuit court defendant contested plaintiff's entire claim.

---

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 787, n. 96; p. 790, n. 2, 3; Costs, 15CJ, p. 252, n. 74 New; Fraudulent Conveyances, 27CJ, p. 875, n. 27; p. 879, n. 87, 88, 91, 92; p. 880, n. 6; p. 887, n. 97 New, 98 New, 2 New.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Victor H. Falkenhainer, Judge.

AFFIRMED.

W. H. *Douglass* for appellant.

(1) There was a valid and binding contract entered into between plaintiff and the defendant on October 11, 1923, whereby plaintiff purchased from the defendant and the defendant sold to plaintiff the floral shop on Easton Avenue because: (a) Plaintiff has sued for a breach of this contract and, therefore, cannot deny its validity. (b) The plaintiff does not deny this contract, and the receipt offered in evidence by plaintiff shows that a contract was made on that date that was valid and binding between the parties and which entitled

plaintiff to the possession of the floral shop upon the terms mentioned in contract. Vantress v. Trimbell, 214 Mo. App. 30; Cousins v. Bowling, 100 Mo. App. 452; Bass et al v. Walsh, 39 Mo. 192; State v. Swift & Co., 273 Mo. 462; Bank v. Smith, 107 Mo. App. 178; 24 R. C. L. 18, sec. 279; Lainsden v. Howard, 210 Mo. App. 645; Sikes v. Freeman, 204 S. W. 948, and citations; Kuhler v. Tobin, 61 Mo. App. 576; Estis v. Hernden et al., 153 Mo. App. 381 and citations. (2)   When the contract was made on October 11, 1923, between plaintiff and defendant for the purchase by plaintiff from defendant of the floral shop on Easton Avenue, this was a valid and binding contract between the parties, and its validity was not effected by the provisions of the Bulk Sales Law.   Kirby v. Balke, 306 Mo. 101; Newman v. Garfield, 5 A. L. R. 1507, and citations.   (3) The Bulk Sales Law does not cover a floral shop such as mentioned in the evidence as it is not "a stock of merchandise" within the meaning of that law.   Balter v. Miller & Krum, 199 Mo. App. 380; Bolanovich v. Tobacco Co., 261 S. W. 723; Breweries Co. v. Lawton, 200 Mo. App. 240; Co. v. Sweat, 25 L. R. A. (N. S.) 758.   (4)   The evidence shows defendant owned and conducted two floral shops at the time he sold the one on Easton Avenue to plaintiff, and he voluntarily offered to give plaintiff a list of the creditors on the Easton Avenue shop covered by the contract, and this was a compliance with the Bulk Sales Law.   Rubenstein v. Bryson, 245 S. W. 585; Breweries Co. v. Lawton, 200 Mo. App. 240; Supply Co. v. Smith, 182 Mo. App. 212.   (5)   The court erred in taxing the costs of this case in the circuit court against the defendant as defendant was successful in his appeal, and the court also erred in overruling defendant's motion to retax   the costs of this case in the circuit court because defendant was successful on his appeal.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

(1)   It was clearly the intention of the parties that the earnest money contract was a contract to sell and not a sale and the intention of the parties governs. 13 C. J. 521; Turner Looker Liquor Co. v. Hindman, 232 S. W. 1076.   (2)   "Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great, if not controlling,   weight in determining its proper interpretation." 13 C. J. 546.   (3)   "If the contract is silent on the question of delivery and time of payment of the purchase price, it is universally held that payment of the purchase price and delivery of the goods are to be simultaneous, and title does not pass until payment is made."   Broughton v. Hunter's Bank, 264 S. W. 469.   (4)   This was a contract to sell one of two retail floral stores in St. Louis owned by defendant.   The Bulk Sales Law applies to retail merchants, traders and dealers.   27 C. J. 878; Gallup v. Rhodes, 230 S. W. 664.

(5) Defendant had two retail floral stores in St. Louis. He contracted to sell the Easton Avenue store to plaintiff. He declined to state the names of those who had extended credit for merchandise, etc., to the other store. This was a breach of the right which plaintiff had to require defendant to comply with the Bulk Sales Law. "The term 'creditors' as descriptive of the persons in whose favor the statute declares bulk sales fraudulent and void is usually not restricted to any particular class of creditors, but includes all persons who were creditors of the seller at the time of the sale, although their claims had not been reduced to judgment or were not due, and although they were not creditors for merchandise, but were merely general creditors of the seller in other transactions." 27 C. J. 879; Supply Co. v. Smith, 182 Mo. App. 212; Phillips v. Verbeke, 200 Pac. 1091; Gardner v. Goodner Wholesale Gro. Co., 247 S. W. 291; George H. West Shoe Co. v. Lemish, 124 Atl. 87; Burnett v. Trimmell, L. R. A. 1918, E. 1058; Prins v. American Trust Co., 275 S. W. 914; Anderson v. Merchants' and Miners' State Bank, 129 S. E. 650. (6) Under the earnest-money receipt defendant was not entitled to a mortgage securing deferred payments. His insistence upon said mortgage was a violation of the contract.

SUTTON, C.—This is an action to recover $500 damages for breach of contract. The action was commenced in a justice court in the city of St. Louis. From the justice court the case went to the circuit court on appeal. Upon a trial anew in the circuit court, without a jury, judgment was given in favor of plaintiff for $100, and the defendant appeals.

There is no controversy about the facts.

On October 11, 1923, plaintiff and defendant entered into a contract for the sale by defendant to plaintiff of a stock of merchandise, fixtures, and equipment, and pursuant thereto plaintiff paid defendant $100 on the purchase price, and the defendant executed and delivered to plaintiff the following instrument:

"St. Louis, Mo., October 11, 1923.

"Received from Mr. D. W. Roberts ($100) one hundred dollars as earnest money on purchase of my Florist Store at 5945 Easton Avenue, which is to apply as first part of principal of purchase price of ($2250) two thousand two hundred and fifty dollars, which by mutual arrangement is part of ($1125) eleven hundred and twenty five dollars, which is to be paid within (30) thirty days from date; balance of ($1125) eleven hundred and twenty-five dollars to be paid in monthly installments of ($100) one hundred dollars per month, first payment to begin January 2, 1924. The purchase price of $2250 is for all equipment, stock and fixtures contained in said store.

"T. KAEMMERER."

It was agreed between the parties that the defendant should remain in possession of the property, selling the stock from day to day in the course of his business as a merchant, and that when they came to close the deal thirty days after October 11th, defendant would turn over the possession and see that the stock was then equivalent in value to what it was on October 11th. Defendant had a similar stock of merchandise at a store on Kingshighway. After October 11th he remained in possession of the Easton Avenue store, selling the stock in the course of his business as a merchant pursuant to agreement. There was nothing said by either of the parties about compliance with the Bulk Sales Statute until November 6, 1923. On that day the plaintiff informed the defendant that he was ready to make the further payment of $1025 and to otherwise comply with his contract, and requested of defendant a list of his creditors. The defendant announced that he was willing to give, and would give, a list of the creditors of the Easton Avenue store, but refused to give a list of the creditors of the Kingshighway store. Plaintiff insisted upon having a list of the creditors of both places of business. Defendant also refused to close the deal and deliver the property unless the plaintiff would give him a chattel mortgage on the fixtures and equipment to secure the deferred payments. A further conference was had between the parties on November 10th, when the defendant again refused to give the plaintiff a list of the creditors of the Kingshighway store or to close the deal and deliver the property unless the plaintiff would give security for the deferred payments, but again expressed his willingness to give a list of the creditors of the Easton Avenue store. Plaintiff declined to accept these terms, and defendant refused to go on with the deal. Thereupon this suit was brought.

The defendant says that the purpose of the Bulk Sales Statute is to protect the creditors alone who sell to merchants for resale, and argues from this premise that the statute does not protect the creditors who sold goods to the defendant for resale at his store or place of business on Kingshighway, but protects only the creditors who sold goods to the defendant for resale at his store or place of business on Easton Avenue where the stock of merchandise sold to the plaintiff was situated. Bulk sales statutes similar to ours have been enacted in many of the other states. The universal construction placed upon these statutes by the courts is that they protect all persons who were creditors of the seller at the time of the sale, though they were not creditors for merchandise but were merely general creditors of the seller in other transactions. [Phillips v. Verbeke (Wash.), 200 Pac. 1091; Gardner v. Goodner Wholesale Grocery Co. (Tex. Civ. App.), 247 S. W. 291; Eklund v. Hopkins, 36 Wash. 179; Geo. H. West Shoe Co. v. Lemish (Pa.), 124 Atl. 87; Burnett v. Trimmell, 103 Kas.

130; Fidelity & Deposit Co. of Maryland v. Thomas, 133 Md. 270, l. c. 273; Johnston Bros. Co. v. Washburn, 16 Ala. App. 311; Prins v. American Trust Co. (Ark.), 275 S. W. 914; Anderson v. Merchants' & Miners' State Bank (Ga.), 129 S. E. 650; McKinster v. Sager, 163 Ind. 671; Galbraith v. Oklahoma State Bank, 36 Okla. 807, l. c. 811; Rabalsky v. Levenson, 221 Mass. 289; Peoples Savings Bank v. Van Allsburg, 165 Mich. 524.] The same construction seems to have been placed upon our own statute by the Springfield Court of Appeals in Joplin Supply Co. v. Smith, 182 Mo. App. 212, l. c. 222, 167 S. W. 649.

Our statute declares in express terms that the sale in bulk of a stock of merchandise "shall be fraudulent and void as against all creditors of the vendor," unless the vendee demands and receives from the vendor a written statement of the names and addresses of "all creditors of such vendor," certified by the vendor under oath "to be a full, accurate and complete list of his creditors," and shall notify "each of the creditors of the vendor named in said list," and no reason why the statute should not be construed according to its express terms has been suggested.

If the statute should be construed as protecting all creditors of the vendor who sell merchandise to the vendor for resale in the course of his business as a merchant and as protecting only such creditors, it would then make an improper discrimination amongst the vendor's creditors and would be unconstitutional as class legislation. The Legislature has no right to make an arbitrary classification of creditors for the purpose of giving one class preference over the other, and we must presume that the Legislature did not intend to do so in the enactment of this statute. In other words, the statute must be so construed, if so it may be consistent with its language, that it will not be invalid for impinging upon constitutional guaranties.

Defendant appears to rely upon Independent Breweries Co. v. Lawton, 200 Mo. App. 238, 204 S. W. 730, and other cases, which hold that the Bulk Sales Statute applies only to bulk sales made by merchants who purchase merchandise for the purpose of resale in the course of their business as merchants. The courts in these cases deal with the merchant who makes a bulk sale, not with his creditors. They undertake to say what character of business must be conducted by the merchant to bring him within the terms of the statute, and not what character or class of creditors come within the statute and are entitled to its protection. They say that the merchant who comes within the statute is one who buys goods for resale in his business as a merchant, but they do not say that the creditors who are entitled to the protection of the statute are those only who sell goods to the merchant for resale in his business as a merchant. The differ-

ence is so wide and the distinction so clear that discussion is unnecessary.

But if we accept the defendant's view that the statute protects only those creditors who sell to merchants for resale, the so-called creditors of his Kingshighway store were nevertheless within the protection of the statute. Defendant did not testify at the trial, but it was shown that he admitted that he owed debts for merchandise purchased for resale in his business as a merchant; that he did not state the amount of his indebtedness, but stated that the amount owing to the creditors of the Easton Avenue store was small and that the amount owing to the creditors of the Kingshighway store was large. These creditors were all creditors of the defendant for goods purchased by him for resale in his business as a merchant. They were his creditors, not creditors of his stores, and they were all entitled to the protection of the statute.

This defense does not appeal to a right sense of justice. It would have been an easy matter for defendant to have given to plaintiff a list of all his creditors so that they could be notified in compliance with the Bulk Sales Statute, and the sale could then have been consummated with the same freedom from interference of creditors as though the statute had never been enacted. But he declined to comply with the statute, and insisted that the plaintiff should accept from him the property and pay the purchase price therefor under a sale fraudulent and void as to his creditors, and in addition refused to deliver the property unless the plaintiff would give security for the deferred payments, which it is conceded was not required by the contract the parties had made. The defendant in refusing to comply with the Bulk Sales Statute, as well as in refusing to deliver the property without the giving of security for the deferred payments, breached his contract with plaintiff, and plaintiff was entitled to recover by way of damages for such breach at least the amount paid by him on the purchase price.

Defendant contends that the Bulk Sales Statute does not apply because the stock which the defendant contracted to sell to plaintiff was not merchandise within the meaning of the statute. There is no merit in this contention. The stock consisted of commodities purchased by defendant for resale in his business as a merchant in the same form in which they were purchased.

Defendant insists that the bulk sale of defendant's stock and fixtures was made when the contract was executed between the parties on October 11th, and that the title to the property then passed to the plaintiff and the sale was complete, and that the plaintiff not having requested of the defendant a list of his creditors at that time, it was too late to request the list four days before the date on which the deal was to be consummated by delivery of the property pursuant to

the contract. We are unable to accept this view. The contract entered into on October 11th was not an executed contract of sale. It was a mere executory contract to sell. It is conceded that possession of the property was not to be delivered until the further payment of $1025 was made pursuant to the terms of the contract, thirty days after its execution, and that the defendant was to remain in possession of the property and dispose of the stock in the course of his business as a merchant the same as he had done before the contract was made. He was not to account to the plaintiff in any way for the stock sold, or for the proceeds thereof, or the profits thereon, but he was to sell it and deal with it as his own, and his agreement was to deliver to the plaintiff on final consummation of the deal a stock of equal value with the stock on hand at the time the contract was entered into. It is clear that it was not the intention of the parties to pass the title to the property until the further payment of $1025 was made and the property delivered pursuant to the contract. In the absence of any agreement that the defendant should be relieved from compliance with the statute, an agreement to comply therewith was implied. The fact that the plaintiff did not request compliance with the statute until four days before the deal was to be consummated by delivery of the property did not defeat his right to demand compliance. Time was not of the essence of the contract, and, if it was, the defendant waived it, for when requested to comply with the statute he did not insist that the request came too late under the terms of the contract, but offered to give plaintiff a list of the so-called creditors of the Easton Avenue store, and insisted then, as he insists now, that this was all he was required to do to fully comply with the statute. If defendant had promptly complied with the statute when requested to do so, there need not have been a delay in the consummation of the sale of more than three days beyond the period expressed in the contract. It is difficult to believe that this slight delay could have been a matter of any consequence to a party ready and willing to faithfully perform his contract.

Defendant further insists that, though the Bulk Sales Statute applies to this transaction as to all creditors of the defendant, and though it was the duty of the defendant to comply with the statute when so requested by the plaintiff, yet the contract entered into between the parties on October 11th was a valid and binding contract between the parties, and that the plaintiff brought his suit for damages for the breach of the contract as a valid and binding contract, and that plaintiff cannot now be permitted to say, for the purpose of upholding his judgment in the court below, that the contract was void. But plaintiff does not say that the contract was void. He insists that it was a valid and binding executory contract to sell, and in this in-

sistence the plaintiff is clearly right. The contract was valid and binding, and as a part of the contract the defendant impliedly agreed to comply with the Bulk Sales Statute and to give the plaintiff a good title to the property. He refused to do this and offered the plaintiff a title void as to creditors and encumbered by their claims. And he refused to deliver the property to the plaintiff upon compliance by him with the contract according to its terms. He nevertheless held on to the earnest money paid him by the plaintiff as a part of the purchase price. It would be difficult to conceive of a more flagrant breach of a valid and binding contract than this.

Finally, the defendant assigns error upon the action of the court in taxing the costs accruing in the circuit court on appeal against him and in refusing to retax the costs on his motion against the plaintiff. In support of this assignment defendant argues that, since the plaintiff recovered a judgment for $500 in the justice court and recovered only $100 in the circuit court, the defendant was therefore the successful party in the circuit court to the extent that he reduced the judgment of the justice court. The argument is untenable. The defendant appealed from the whole judgment rendered in the justice court. The cause was for trial anew in the circuit court. Upon the trial anew the defendant contested plaintiff's entire claim, and plaintiff was entitled to his costs in the circuit court as well as in the justice court.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.